■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROLANDO GONZALEZ, Appellant.—Judgment, Supreme Court, New York County (Murray Mogel, J.), rendered March 15, 1988, convicting defendant, after a jury trial of murder in the second degree (Penal Law § 125.25 [2]) and assault in the first degree (Penal Law § 120.10 [1]) and sentencing him to indeterminate concurrent terms of imprisonment of from 15 years to life and 5 to 15 years, respectively, unanimously reversed, on the law, the facts, and as a matter of discretion in the interest of justice, the count of murder in the second degree is dis-

missed and the matter is remanded for a new trial on the count of assault in the first degree.

The judgment appealed from stemmed from the fatal shooting of Michael Murphy and the wounding of his companion John Stack, during the early morning hours of September 3, 1986. The two men, who had been drinking at various bars from approximately 10:00 P.M. until 3:00 A.M., had gone to East 115th Street to purchase cocaine from either "CC" or "Barker", two local dealers known to Stack from prior transactions.

In what was apparently a staged incident to trick the two men out of their money, a dispute over who would get the sale erupted between CC and Barker immediately after the would-be buyers gave CC $70 to $100. As the argument grew more heated, CC threw a bottle at Barker and then ran into a nearby housing project with the latter ostensibly in pursuit.

After first grabbing golf clubs from the trunk of Stack's car, Murphy and Stack followed the dealers. Wielding the clubs as they entered the housing complex, the two men encountered several Hispanics sitting on benches. Among them were defendant and codefendants, Edwin Espada and Raymond Vega. As Murphy drew closer, he came face-to-face with Vega, whom he pushed with his golf club, and then either Murphy or Stack grabbed a young boy, which led defendant or Espada to throw a bottle at Murphy. At this point, Murphy raised the golf club over his head in apparent preparation to strike, and the three defendants pulled out guns and began to shoot. Murphy was hit in the chest, stomach and legs, and died of these multiple gunshot wounds. Stack received a bullet to the chest, and was hospitalized for seven days.

Defendant, Espada, and Vega were each charged with one count of intentional murder (Penal Law § 125.25 [1]) and, in the alternative, one count of depraved mind murder (Penal Law § 125.25 [2]) for the death of Murphy. The three were further charged with one count of attempted murder and two counts of assault in the first degree for the shooting of Stack. During the trial, Espada and Vega pleaded guilty to manslaughter in the first degree, and were each sentenced to indeterminate terms of imprisonment of from 7 to 14 years. Defendant's case went to the jury, which acquitted him of the intentional murder and convicted him of depraved mind murder and assault in the first degree.

On appeal, defendant urges that it was error for the trial court to have submitted the count of depraved mind murder

to the jury. We agree. Although it is permissible to charge, as was done here, inconsistent counts of murder in the alternative *(People v Gallagher,* 69 NY2d 525; CPL 300.40 [5]), each must be supported by legally sufficient trial evidence. (CPL 300.40; *People v Jarrett,* 118 AD2d 657, 658.) For the charge of depraved mind murder, which is a *"nonintentional* homicide" *(People v Roe,* 74 NY2d 20, 24 [emphasis in original]), what is required is "recklessness plus aggravating circumstances." *(People v Register,* 60 NY2d 270, 278.) This crime "is not and never has been considered as a substitute for intentional homicide." *(Supra,* at 279.)

Upon examination of the record before us, we conclude that no reasonable view of the evidence can support the theory that the shooting which resulted in Murphy's death was reckless. Michael Murphy died as a result of having a hail of bullets fired point blank at him from a distance of approximately 10 feet, conduct which can hardly be deemed reckless. Further evidence of the intentional nature of this shooting may be found in the testimony of an eyewitness who recalled that codefendant Vega had instructed the others that if the white men with golf clubs "came walking back in our direction * * * the order was just to shoot." In short, the record clearly establishes that if defendant was guilty of shooting Murphy, he was guilty of an "intentional shooting or no other." *(People v Wall,* 29 NY2d 863, 864, *affg* 34 AD2d 215.) Thus, the submission of depraved mind murder was improper *(see, People v Boo Wat Cheung,* 141 AD2d 556) and the conviction thereon is vacated, and the count dismissed.

With respect to the remaining charge, that of assault in the first degree for the shooting of John Stack, improperly admitted identification testimony by Sergeant Joseph Ferraro requires reversal and a new trial. During his testimony, Stack was asked which of the defendants had been the first to draw a gun and shoot, and he responded by indicating codefendant Vega. Shortly thereafter, the prosecutor asked additional questions regarding the initial encounter, and Stack reiterated that it was Vega who was involved. Further pursuing this line of inquiry, the prosecutor next queried whether Stack was "100 percent sure" about his identification of Vega, and Stack answered that he was. Finally, the prosecutor questioned Stack about a September 20, 1986 lineup, and the witness testified that he had picked "number three" as the initial shooter, i.e., the one that "confronted Murph[y] at first".

When Sergeant Ferraro took the stand, the prosecutor elicited testimony from him that it was defendant who was

number three at the September 20, 1986 lineup viewed by Stack, and that codefendant Vega was never viewed in a lineup. This testimony, which was admitted pursuant to CPL 60.25, was improperly received. Under pertinent sections of CPL 60.25, a witness is permitted to testify about another witness's prior identification when the latter establishes that he observed the accused at the time and place of the commission of the offense, that on a subsequent occasion he observed the same person, and that he "is unable at the proceeding to state, on the basis of present recollection, whether or not the defendant is the person in question". (CPL 60.25 [1] [a] [iii]; *People v Lagana,* 36 NY2d 71, 74; *People v Nival,* 33 NY2d 391, 394-395.)

Here, Stack evinced no inability to state whether or not defendant was the person in question, but rather, testified that he was "100 percent" certain that the person he had observed and identified in the lineup was codefendant Vega. In *People v Bayron* (66 NY2d 77, 81), the Court of Appeals reiterated that "[c]entral to the admissibility of third-party testimony under CPL 60.25 is the fact that the witness cannot state, 'on the basis of present recollection,' whether or not defendant is the person in question", and declined to extend the circumstances admitting such testimony to where the witness refused to identify defendant in court because of fear of retribution.

Thus, Ferraro's testimony amounted to classic identification bolstering, which has long been prohibited. *(People v Trowbridge,* 305 NY 471; *see, People v Reeves,* 50 AD2d 746.)

To the extent that the foregoing errors at trial were not preserved for appellate review as a matter of law *(see,* CPL 470.05 [2]), we hold that they are sufficiently egregious for the exercise of this court's interest of justice jurisdiction.

In his final argument on appeal defendant asserts that the prosecutor improperly vouched for the credibility of his witnesses and misstated aspects of the evidence. If established, such claims may provide grounds for reversal. *(See, People v Paperno,* 54 NY2d 294, 300-301.) In light of our directive that a new trial be accorded defendant, however, we decline to address the specific claims made here. Concur—Murphy, P. J., Asch, Kassal and Rubin, JJ.