[799 NYS2d 125]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYRONE ATKINSON, Appellant.

Second Department, July 18, 2005

### APPEARANCES OF COUNSEL

*Tyrone Atkinson,* pro se, and *Lynn W. L. Fahey,* New York City (*Melissa S. Horlick* and *Paul Skip Laisure* of counsel), for Tyrone Atkinson, appellant.

*Richard A. Brown, District Attorney,* Kew Gardens (*John M. Castellano, Sharon Y. Brodt* and *Roni C. Piplani* of counsel), for respondent.

### OPINION OF THE COURT

FISHER, J.

On this appeal, the defendant challenges his conviction for depraved indifference murder (*see* Penal Law § 125.25 [2]). He argues that, although the evidence at the trial "may have demonstrated an intent to kill, it was inconsistent with a reckless act, and failed, as a matter of law, to prove the element of recklessness necessary for a conviction of depraved indifference murder." The issue is a recurring one in cases where the jury convicts the defendant of depraved indifference murder for a homicide that appears to have been the result of intentional conduct (*see People v Gonzalez,* 1 NY3d 464 [2004]; *People v Hafeez,* 100 NY2d 253 [2003]; *People v Sanchez,* 98 NY2d 373 [2002]; *People v Gonzalez,* 160 AD2d 502 [1990]; *see also People v Bennett,* 13 AD3d 384 [2004]). The Court of Appeals has addressed the issue most recently in *People v Payne* (3 NY3d 266 [2004]), and one of the questions now before us is whether *Payne* commands reversal here.

### I

Lloyd Clark (hereinafter the deceased) and Earl Graham occasionally sold marijuana out of a grocery store they owned together in Queens. On December 21, 1992, while the deceased was away on a trip, the defendant came into the store and told Graham that he wanted to buy a quantity of marijuana. They agreed on a price of $4,000, and the defendant later sent a man named Mark to pick up the drugs. Graham soon discovered that the bills Mark had given him in exchange for the marijuana were counterfeit. He called the defendant and demanded that he either return the drugs or bring the money. The defendant

did neither and, when the deceased returned from his trip, Graham told him what had happened.

On the evening of January 19, 1993, the deceased was in the store with Kurt Johnson. An associate of the defendant telephoned but the deceased hung up on him after saying only, "[I] don't want to hear it. Bring the stuff back." A second call came in, this one from the defendant himself. Again, the deceased said, "[I] don't want to hear it. Bring it back."

A few minutes later, a man named Marcus Hall arrived at the store, followed soon after by the defendant and two other men. After one of the men asked the deceased why he had hung up on him, the defendant suddenly produced a gun, pointed it at the deceased, and said, "I heard you been telling people you were going to do me." The deceased replied, "that's not right, that ain't true," but the defendant fired one shot at him from a distance of approximately four to five feet, striking him in the neck. After being shot, the deceased made an attempt to get out of the store through the back door behind the counter. He was unsuccessful.

One of the men who had arrived with the defendant seemed shocked at the shooting. Another said, "[T]his wasn't necessary. You didn't tell us that was what we was coming to do." Johnson cursed at the defendant who then turned and pointed the gun at him. Johnson reacted by saying, "[W]hat are you going to do now, kill me too?" As the deceased continued to hold his neck and complain about the pain, the defendant turned and, without firing another shot, walked out of the store with his companions. Johnson and some other men brought the deceased to the hospital where he later died of a single .22 caliber gunshot wound to the neck. Some seven years later, the defendant was apprehended in Maryland and charged with the homicide.

The defendant was indicted and tried on charges of intentional murder, depraved indifference murder, criminal possession of a weapon in the second and third degrees, and menacing in the second degree. At the defendant's request, the trial court also submitted the lesser-included offenses of manslaughter in the first degree and manslaughter in the second degree. The jury acquitted the defendant of intentional murder, but convicted him of depraved indifference murder, criminal possession of a weapon in both the second and third degrees, and menacing in the second degree. In accordance with the trial court's instructions, having convicted the defendant on a charge of murder, the jury returned no verdict on either of the lesser-included manslaughter charges.

The defendant maintains that, although the evidence "may have demonstrated an intent to kill," it was insufficient as a matter of law to prove that he acted recklessly, a necessary element of the crime of depraved indifference murder. We begin our analysis by reviewing some familiar concepts in our criminal law.

## II

Insofar as relevant here, whether a criminal act is intentional or reckless depends upon the relationship between the perpetrator's objective in committing the act and the result the act produces. Penal Law § 15.05 (1) provides in pertinent part that "[a] person acts intentionally with respect to a result . . . when his conscious objective is to cause such result." Penal Law § 15.05 (3) provides in relevant part that

> "[a] person acts recklessly with respect to a result
> . . . when he is aware of and consciously disregards
> a substantial and unjustifiable risk that such result
> will occur . . . [and] [t]he risk [is] of such nature
> and degree that disregard thereof constitutes a gross
> deviation from the standard of conduct that a rea-
> sonable person would observe in the situation."

Thus, for an intentional crime, the perpetrator must engage in conduct with the conscious objective and purpose of causing a particular unlawful result. For a reckless crime, the perpetrator does not act with the conscious objective of causing the unlawful result, but must engage in conduct that creates a substantial and unjustifiable risk that the unlawful result will occur. The reckless perpetrator is aware of the risk but consciously disregards it and engages in the conduct anyhow, thereby deviating grossly from the standard of conduct that a reasonable person would observe in the situation.

With respect to the homicide at issue in this case, the jury was instructed on two intentional crimes and two reckless ones. The more serious intentional crime was murder in the second degree, often called intentional murder. That crime is committed when, "[w]ith intent to cause the death of another person, [the defendant] causes the death of such person or of a third person" (Penal Law § 125.25 [1]). The lesser intentional offense was manslaughter in the first degree. That crime is committed when, "[w]ith intent to cause serious physical injury to another person, [the defendant] causes the death of such person or of a third person" (Penal Law § 125.20 [1]). Both crimes result in death. The difference lies in the perpetrator's intent, that is,

the perpetrator's objective in committing the act. For intentional murder, the perpetrator acts with the intent to cause death and does so. For first-degree manslaughter, the perpetrator intends to cause only serious physical injury but his or her conduct results in death.

The jury was also instructed on two reckless offenses. One was manslaughter in the second degree, often called reckless homicide. That crime is committed when the defendant "recklessly causes the death of another person" (Penal Law § 125.15 [1]). Thus, a defendant would be guilty of reckless homicide if he or she engaged in conduct that created a substantial and unjustifiable risk that another person's death would result, and if the defendant was aware of the risk but consciously disregarded it and engaged in the conduct anyhow, thereby deviating grossly from the standard of conduct that a reasonable person would observe in the situation, and if the defendant's conduct in fact caused another person's death.

The second reckless offense on which the jury was instructed was murder in the second degree, charged as depraved indifference murder. That crime is more serious than ordinary reckless homicide, and is punishable at the same level as intentional murder (see Penal Law § 125.25). Depraved indifference murder is committed when, "[u]nder circumstances evincing a depraved indifference to human life, [the defendant] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). Comparing statutory definitions, these two reckless homicide offenses differ in that, for depraved indifference murder, the risk of death created by the defendant's conduct must not only be substantial and unjustifiable, it must also be grave, and the defendant's conduct, engaged in with conscious disregard of that risk, must not merely constitute a gross deviation from the standard of conduct that a reasonable person would observe in the situation, but it must be such as to evince a depraved indifference to human life (see People v Sanchez, supra at 380; People v Roe, 74 NY2d 20, 24 [1989]; People v Hartman, 4 AD3d 22, 24 [2004]).

The culpable mental state required for depraved indifference murder is recklessness (see People v Roe, supra at 24; People v St. Helen, 293 AD2d 765, 766 [2002]). Depraved indifference to human life does not define a mens rea; it refers to the objective circumstances surrounding a defendant's conduct that aggravate the seriousness of the crime by elevating the substantial

and unjustifiable risk of death necessary for reckless homicide to an imminently dangerous, very substantial risk, manifestly destined to result in death (*see People v Sanchez, supra* at 378; *People v Cole,* 85 NY2d 990, 992 [1995]; *People v McManus,* 67 NY2d 541, 548 [1986]; *People v Register,* 60 NY2d 270, 277 [1983], *cert denied* 466 US 953 [1984]).

## III

Ordinarily, a defendant cannot be guilty of both the intentional and reckless homicide of the same individual because a defendant cannot intend to cause a person's death and at the same time consciously disregard a risk that he or she will succeed in doing so. Thus, in *People v Gallagher* (69 NY2d 525 [1987]), the defendant, a veteran New York City police officer, shot and killed a fellow police officer after an all-night celebration involving the consumption of large quantities of alcohol. The defendant was indicted on one count of intentional murder and one count of depraved indifference murder. The jury convicted him of both intentional murder and reckless manslaughter—the latter charge submitted as a lesser-included offense of the depraved indifference murder count.

The Court of Appeals reversed and ordered a new trial, finding that the trial court erred in refusing the defendant's request to submit the murder counts only in the alternative. The Court held that submission in the alternative was required because the two murder charges were "inconsistent counts" within the meaning of CPL 300.30 (5) in that "guilt of the offense charged in one necessarily negates guilt of the offense charged in the other" (*People v Gallagher, supra* at 529). The Court wrote:

> "One who acts intentionally in shooting a person to death—that is, with the conscious objective of bringing about that result . . . cannot at the same time act recklessly—that is, with conscious disregard of a substantial and unjustifiable risk that such a result will occur . . . The act is either intended or not intended; it cannot simultaneously be both. Thus, where the shooting (the act) and the death (the result) are the same, a defendant cannot be convicted twice for the murder, once for acting 'intentionally' and once for acting 'recklessly.' " (*Id.*)*

---

* The *Gallagher* court had no occasion to consider circumstances involving what is sometimes called "transferred intent" where the actual victim of the

*Gallagher* stands for the proposition that a person cannot at the same time cause a single result both intentionally and recklessly (*see also People v Gonzalez, supra at* 467; *People v Hafeez, supra*). It does not, however, speak to the circumstance in which the result recklessly caused is different from the result intended.

A defendant may, for example, attack the victim, not with the intent to cause death, but with the intent to cause the victim serious physical injury. The defendant's conduct may nevertheless be such as to create a substantial and unjustifiable risk that the victim will not merely sustain serious physical injury but will die. Stated otherwise, "[a] defendant could certainly intend one result—serious physical injury—while . . . creating a [substantial and unjustifiable] risk that a different, more serious result—death—would ensue from his actions" (*People v Trappier,* 87 NY2d 55, 59 [1995]; *see People v Baptiste,* 306 AD2d 562, 564 [2003]; *People v Meehan,* 229 AD2d 715, 718 [1996]; *cf. People v Ashraf,* 186 AD2d 1057, 1058 [1992]). If the defendant, intending only to cause serious physical injury, is aware of the risk that his or her conduct will cause death but consciously disregards that risk and engages in the conduct anyhow, thereby deviating grossly from the standard of conduct that a reasonable person would observe in the situation, and death results, the defendant is guilty of both an intentional crime and a reckless one. The defendant would be guilty of first-degree manslaughter for having caused death while intending to cause only serious physical injury, and second-degree manslaughter for having recklessly caused death (*see People v Trappier, supra; People v Belcher,* 289 AD2d 1039 [2001]; *People v Meehan, supra; Sweet v Bennett,* 353 F3d 135 [2d Cir 2003]; *but see People v Robinson,* 145 AD2d 184 [1989], *affd* 75 NY2d 879 [1990]).

homicidal act is not the intended victim. A person who intends to kill a particular individual standing in a crowd, for example, and who, acting with that intent, fires into the crowd fatally wounding a different individual may be guilty of both intentional and reckless homicide (*see People v Monserate,* 256 AD2d 15 [1998]). The person would be guilty of intentional murder because the statute defining that offense provides that "[a] person is guilty of [intentional] murder . . . when . . . [w]ith intent to cause the death of another person, he causes the death of such person *or of a third person*" (Penal Law § 125.25 [1] [emphasis supplied]). And the person might also be guilty of reckless homicide (*see* Penal Law § 15.05 [3]; § 125.15 [1]) because, by shooting into the crowd and unintentionally killing the actual victim, the person engaged in conduct that created a substantial and unjustifiable risk that someone in the crowd would die, and, although aware of that risk, consciously disregarded it and fired into the crowd anyhow, thereby deviating grossly from the standard of conduct that a reasonable person would observe in the situation.

Plainly, then, a single homicidal act committed against one individual can, under certain circumstances, constitute both an intentional crime and a reckless one, provided only that the intent harbored by the perpetrator is other than an intent to kill. Where, however, the defendant acts with the intent to kill the victim, he or she may not be convicted of any reckless crime, either reckless homicide or depraved indifference murder, in connection with the death.

## IV

Consistent with these principles, a verdict convicting a defendant of depraved indifference murder cannot stand where the evidence at a homicide trial admits of no mens rea other than an intent to kill (*see e.g. People v Payne, supra; People v Gonzalez,* 1 NY3d 464 [2004], *supra; People v Hafeez, supra; People v Bennett, supra; People v Gonzalez,* 160 AD2d 502 [1990], *supra*). Thus, in *People v Gonzalez* (1 NY3d 464 [2004], *supra*), the defendant entered a barbershop, pulled a gun from his waistband, and shot the victim in the chest from a distance of six to seven feet. As the victim fell to the floor, the defendant fired again, shooting him in the head. The defendant then leaned over the victim's prone body and fired eight more shots into his back and head. The defendant was tried, inter alia, for both intentional and depraved indifference murder. The two charges were submitted in the alternative and the jury acquitted the defendant of intentional murder but convicted him of depraved indifference murder.

The Court of Appeals reversed, finding that "[t]he only reasonable view of the evidence . . . was that [the] defendant intentionally killed the victim by aiming a gun directly at him and shooting him 10 times at close range, even after he had fallen to the ground" (*id.* at 467). The Court reasoned that

"[w]hen a defendant is . . . indifferent to whether death will likely result from his or her conduct . . . depraved indifference may be manifest. But where . . . a defendant's conduct is specifically designed to cause the death of the victim, it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct" (*id.*)

Similarly, in *People v Payne* (*supra*), a dispute between the defendant and the deceased ended when the defendant confronted the deceased with a loaded 12-gauge shotgun he called an "elephant gun" (*id.* at 269). After the two exchanged words, the de-

fendant shot the deceased at point-blank range, striking him below the heart and just above the navel, killing him. The jury acquitted the defendant of intentional murder but convicted him of depraved indifference murder. The Court of Appeals reversed, holding, inter alia, that conduct "can never result in depraved indifference murder when, as here, there is a manifest intent to kill" (*id.* at 271; *see also People v Hafeez, supra* at 256 ["(I)nasmuch as there is no record support here for the jury's decision that (the) defendant's conduct . . . was reckless and depraved rather than intentional, the jury's finding of depraved indifference murder cannot be upheld"]).

In *People v Gonzalez* (160 AD2d 502 [1990], *supra*), the Appellate Division, First Department, reversed a conviction of depraved indifference murder where the victim "died as a result of having a hail of bullets fired point blank at him from a distance of approximately 10 feet" (*id.* at 504). Similarly, in *People v Bennett (supra)*, the defendant shot at the victim several times at close range, hitting him in the neck and chest. This Court vacated the conviction of depraved indifference murder, finding that "a rational jury could not have concluded that the defendant 'recklessly' caused the victim's death . . . but rather, could only conclude that he intentionally did so" (*id.* at 385).

In the case at bar, the jury's acquittal on the intentional murder count signaled its conclusion that the evidence left, at the least, a reasonable doubt as to whether the defendant had acted with the intent to kill. Inasmuch as the defendant fired his small caliber weapon only once and left the store while the deceased was still conscious, speaking, and surrounded by persons who could, and did, seek medical assistance for him, a rational jury certainly could have concluded that the evidence did not establish that the defendant intended to kill the deceased (*see People v Sanchez, supra* at 377; *People v Suarez,* 13 AD3d 320 [2004], *lv granted* 4 NY3d 857 [2005]; *People v Garbed,* 9 AD3d 255 [2004]; *People v Martin,* 8 AD3d 883 [2004]; *People v Jones,* 283 AD2d 665, 668 [2001]; *cf. People v Heidi,* 84 NY2d 943 [1994]). Moreover, the defendant will not be heard to argue to the contrary.

At the close of the evidence, the defendant asked the trial court to submit for jury consideration as lesser-included offenses the charges of manslaughter in the first degree and manslaughter in the second degree. In order to have a trial court submit a lesser-included offense of a charged crime, a defendant

must show first, that it is impossible to commit the charged crime without concomitantly, by the same conduct, committing the lesser offense, and second, that there is a reasonable view of the evidence under which the defendant committed the lesser offense but not the greater (*see* CPL 300.50 [1]; *People v Glover*, 57 NY2d 61, 63 [1982]).

On this record, as the defendant successfully argued in the trial court, there was a reasonable view of the evidence under which he committed either manslaughter in the first degree or manslaughter in the second degree, but not murder. Indeed, had the trial court refused to submit the two charges as lesser-included offenses, reversal would likely be required (*see e.g. People v Caruso*, 6 AD3d 980, 984 [2004] [murder conviction reversed for trial court's refusal to submit manslaughter in the first and second degrees as lesser included offenses where "(t)he victim did not die immediately and was conscious following the shooting . . . (and the) defendant did not take additional shots to a vital area of the victim's body to ensure the victim's immediate demise"]).

By asking the trial court to submit the two lesser-included offenses here, the defendant was arguing that there was a reasonable view of the evidence under which he had acted without the intent to kill. And, more specifically, by asking for the submission of manslaughter in the second degree, the defendant maintained, in effect, that there was a reasonable view of the evidence under which he caused the deceased's death recklessly rather than intentionally, a position diametrically opposed to the one he now takes that the evidence "was inconsistent with a reckless act, and failed, as a matter of law, to prove the element of recklessness necessary for a conviction of depraved indifference murder." Thus, the defendant has failed to preserve, and in fact has waived, his challenge to the sufficiency of the evidence of recklessness underlying his conviction (*see People v Sanchez, supra* at 378; *People v Garbed, supra*; *see also People v Maldonado*, 196 AD2d 778 [1993]; *cf. People v Payne*, 3 NY3d 266, 269 n 1 [2004], *supra* ["Neither side asked that the jury consider lesser included charges"]). In any event, because a reasonable view of the evidence here supported the conclusion that the defendant acted with a mens rea other than an intent to kill, a jury finding of recklessness was not foreclosed.

## V

On the merits, we disagree with the defendant's contention on appeal that the evidence at trial "failed, as a matter of law,

to prove the element of recklessness necessary for a conviction of depraved indifference murder." To the contrary, viewing the evidence in the light most favorable to the prosecution (*see People v Contes,* 60 NY2d 620 [1983]), we conclude that a rational jury could have found, beyond a reasonable doubt, that, although the defendant did not intend to kill the deceased, his act of discharging a weapon in his direction created a substantial and unjustifiable risk that the deceased would die, and that the defendant was aware of that risk and consciously disregarded it, firing the weapon anyhow, thereby deviating grossly from the standard of conduct that a reasonable person would observe in the situation and causing the deceased's death.

The only question remaining, then, is whether the evidence was legally sufficient to support the jury's further conclusion that the defendant's conduct was such as to constitute not merely reckless homicide but depraved indifference murder. As discussed earlier, for a reckless killing to rise to the level of depraved indifference murder, the objective circumstances surrounding the defendant's reckless conduct must be such as to elevate a substantial and unjustifiable risk of death to an imminently dangerous, very substantial risk, manifestly destined to result in death (*see People v Hafeez, supra; People v Sanchez, supra; People v Lynch,* 95 NY2d 243, 247 [2000]; *People v Roe, supra* at 24; *People v Register, supra*). The risk may be to many individuals or to only one (*see* Penal Law § 125.25 [2]; *People v Gonzalez, supra* at 467; *see also People v Mills,* 1 NY3d 269 [2003]; *People v Sanchez, supra* at 383-384; *People v Kibbe,* 35 NY2d 407 [1974]; *People v Poplin,* 30 NY2d 85, 89 [1972]; *People v Brooks,* 117 AD2d 972 [1986]; *People v Le Grand,* 61 AD2d 815, *lv denied* 44 NY2d 737 [1978], *cert denied* 439 US 835 [1978]; *People v Robinson,* 43 AD2d 963, 964 [1974]). And the conduct must be "so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another" (*People v Feiner,* 61 NY2d 971, 973 [1984]; *see also People v Russell,* 91 NY2d 280, 287-288 [1998]).

In the case at bar, the evidence established that the defendant fired a shot directly at the deceased from very close range, striking him in the neck, and then walked away. The jury concluded that, although the defendant did not harbor the conscious objective of killing the deceased, he committed a reckless act that was imminently dangerous to the deceased and created a very

high risk that he would die, and was so wanton, so deficient in a moral sense of concern, so devoid of regard for the deceased's life, and so blameworthy as to warrant the same criminal liability as would be imposed if the defendant had killed the deceased intentionally. We cannot conclude that the evidence was legally insufficient to support that finding (*see People v Sanchez, supra; People v Meleney,* 11 AD3d 983 [2004]; *People v Curry,* 198 AD2d 371 [1993]; *People v Lopez,* 197 AD2d 594 [1993]). Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see* CPL 470.15 [5]).

## VI

Finally, we do not read the Court of Appeals' decision in *People v Payne (supra)* as requiring a different result. In *Payne,* the Court reversed a conviction of depraved indifference murder in a case involving "a manifest intent to kill" (*id.* at 271). As discussed earlier, where the evidence unequivocally establishes such an intent, a conviction of depraved indifference murder cannot stand (*see People v Gonzalez,* 1 NY3d 464 [2004], *supra; People v Hafeez, supra* at 259; *People v Bennett, supra; People v Gonzalez,* 160 AD2d 502, 504 [1990], *supra*). Although that principle resolved the case, the Court went on to state in obiter dictum:

> "[D]epraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York. While we have identified instances in which a killing could qualify as depraved indifference murder, a point-blank shooting is ordinarily not one of them. . . .

> "[I]f a defendant fatally shoots the intended victim once, it could be murder, manslaughter in the first or second degree or criminal negligence (or self-defense), but not depraved indifference murder. Moreover, it should be obvious that the more the defendant shoots (or stabs or bludgeons) the victim, the more clearly intentional is the homicide. Firing more rounds or inflicting more wounds does not make the act more depravedly *indifferent,* but more intentional. Absent the type of circumstances in, for example, *Sanchez* (where others were endangered), a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder" (3 NY3d at 270, 272).

We do not believe the Court intended this observation to be taken as a firm holding that, as a matter of law, a jury is foreclosed from considering a depraved indifference murder charge whenever a death is the result of a one-on-one confrontation in which no other persons are endangered. First, only seven months before *Payne* was decided, the Court of Appeals wrote in *People v Gonzalez* (*supra* at 467 [Kaye, Ch. J.]) that "[w]hen a defendant is . . . indifferent to whether death will likely result from his or her conduct—*including with respect to a single victim*—depraved indifference may be manifest" (emphasis supplied). Second, in *People v Sanchez* (*supra* at 383), the Court wrote that it had long ago "summarily declared dead" any requirement that an act constituting depraved indifference murder " 'endanger[ ] indiscriminately the lives of many' " (*id.,* quoting *Darry v People,* 10 NY 120, 146 [1854]; *see People v Poplin,* 30 NY2d 85, 89 [1972]). Indeed, although *Payne* implies that *Sanchez* affirmed a depraved indifference murder conviction because persons other than the victim were endangered, the *Sanchez* court did not appear to rely on any such consideration. The Court wrote:

> "Surely, pointing a gun at [the victim], without the slightest justification, discharging it within not more than 18 inches of his body and striking him in the chest, would permit a jury rationally to conclude that [the] defendant demonstrated an indifference to human life so depraved as to be deserving of the same punishment as intentional murder; that it was virtually a *knowing*, although not intentional, homicide. Defendant's disregard of such an exceedingly high likelihood that his conduct would result in [the victim's] death distinguishes his culpability from the degree of recklessness needed to establish the mental element of second degree manslaughter" (98 NY2d at 384).

*Sanchez* was certainly not the only instance in which the Court of Appeals upheld a finding of depraved indifference to human life where only the defendant and the victim were involved. In *People v Roe* (*supra*), for example, a high school student deliberately loaded a mix of "live" and "dummy" shells at random into the magazine of a 12-gauge shotgun. He pumped a shell into the firing chamber not knowing whether it was a "dummy" or a "live" round. He pointed the weapon directly at the victim who was standing approximately 10 feet away and

exclaimed, "Let's play Polish roulette." (*Id.* at 22.) He pulled the trigger and the gun discharged a "live" round, killing the victim (*id.*). The defendant was convicted of depraved indifference murder and, on appeal, he challenged the legal sufficiency of the evidence. Called upon to evaluate the evidence supporting a depraved indifference murder charge where death resulted from a point-blank shooting in a one-on-one confrontation that endangered no one other than the victim, the Court upheld the conviction, observing that "[t]he evidence of the objective circumstances surrounding [the] defendant's point-blank discharge of the shotgun is . . . sufficient to support a finding of the very serious risk of death required for depraved indifference murder" (*id.* at 27).

*Payne* did not repudiate *Roe*. Instead, it distinguished the holding on the ground that the type of shooting involved in that case "is the antithesis of intentional murder because it evinces not an intent to kill, but an indifference—a depraved indifference—to the life or death of the victim" (*People v Payne, supra* at 272 n 2). Thus, *Payne* itself acknowledges that a one-on-one, point-blank shooting involving only one shot and endangering only the victim can, under certain circumstances, evince a depraved indifference to the life of the victim. And, although a "manifest intent to kill" (*id.* at 271) certainly forecloses a finding of depraved indifference to human life, we do not believe that the Court in *Payne* meant to hold that a conviction of depraved indifference murder is permissible *only* where the homicide is not merely unintentional but is "the antithesis of intentional murder" (*id.* at 272 n 2). Between a "manifest intent to kill" and "the antithesis of intentional murder" lie cases in which the characterization of the defendant's conduct as either reckless or intentional presents a legitimate factual question for the jury to resolve.

The Court's holdings in cases involving reckless endangerment in the first degree are also instructive. The definition of that crime is identical to the definition of depraved indifference murder with the exception that the defendant's conduct does not result in death. Thus, reckless endangerment in the first degree is committed "when, under circumstances evincing a depraved indifference to human life, [the defendant] recklessly engages in conduct which creates a grave risk of death to another person" (Penal Law § 120.25).

In *People v Tuck* (87 NY2d 828 [1995]), the Court found the evidence of reckless endangerment in the first degree legally

sufficient where the defendant placed a loaded, operable handgun to the head of the victim and discharged the weapon, inflicting a serious head wound but endangering no one else. Similarly, in *People v Chrysler* (85 NY2d 413 [1995]), the defendant held down his former girlfriend and placed a loaded and operable weapon inches from her temple. As she pleaded to be released, she could see the defendant pulling back the hammer of the gun to cock the weapon. The defendant ultimately relented and put the gun down. He was arrested, tried, and convicted for reckless endangerment in the first degree and, on appeal, challenged the legal sufficiency of the evidence. Again, faced with this one-on-one confrontation in which no one else was endangered, the Court upheld the conviction, holding that, as in homicide cases, the question whether a defendant's conduct evinces mere recklessness or a depraved indifference to human life turns on "an objective assessment of the *degree of risk* presented by [the] defendant's reckless conduct" (*id.* at 415). *Payne* did not distinguish or repudiate the Court's holdings in these reckless endangerment cases.

An overly broad interpretation of *Payne* would certainly have a profound impact on seemingly settled New York law (*see e.g. People v Wilkens,* 8 AD3d 1074 [2004] [depraved indifference murder conviction upheld where, after an argument, the defendant left, returned 10 minutes later with a gun, and shot the victim to death]; *People v Smith,* 255 AD2d 404 [1998] [depraved indifference murder conviction upheld where, after an argument, the defendant pointed sawed-off shotgun at victim and fired, killing her instantly]; *People v Rosario,* 208 AD2d 961 [1994] [depraved indifference murder conviction upheld where the defendant fatally shot victim once in the stomach during a struggle]; *People v Dellemand,* 205 AD2d 551 [1994] [depraved indifference murder conviction upheld where the defendant aimed gun at victim's chest from distance of 10 feet, and after pulling the trigger twice, the gun fired on the third attempt, killing the victim]). We are reluctant to conclude that the Court would have effected such a material change without overruling or repudiating contrary precedents, including its own.

Significantly, a reading of *Payne* that rules out depraved indifference murder whenever the shooting of a single individual results in death without endangering others could well lead to unintended and unreasonable results. For example, *People v Kibbe* (35 NY2d 407 [1974], *supra*) is frequently cited as a good illustration of depraved indifference murder, and was so cited in

*Payne* itself (*see People v Payne, supra* at 272). In *Kibbe,* the defendants and the victim were drinking in a tavern on a cold wintry night as the victim, who was thoroughly intoxicated and flashing hundred dollar bills, asked if someone would give him a ride. The defendants, who had already decided to rob him, volunteered. Once inside their car, the defendants demanded the victim's money and, to make sure they had it all, they compelled him to lower his trousers and remove his shoes. Although the temperature was near zero, the defendants forced the victim out of the vehicle and onto the shoulder of the rural two-lane highway on which they had been traveling, about one-half mile from a gasoline station. Before driving away, they placed the victim's shoes and jacket on the roadway. Twenty minutes to a half-hour later, the victim, still intoxicated and sitting in the middle of the road, was struck and killed by a truck. The Court of Appeals upheld the defendants' convictions of depraved indifference murder.

Suppose, however, that, as they were driving away, one of the *Kibbe* defendants had fired a single shot in the victim's direction, intending only to frighten him. If the shot missed the victim and he later died, as he did, as a result of being struck on the roadway by a truck, the defendants' convictions of depraved indifference murder would presumably be unaffected. But suppose the shot ricocheted off the roadway and fortuitously struck and killed the victim. Under an expansive reading of *Payne,* the defendants' criminal culpability would be reduced because the death, now having been caused by a single gunshot, fired without an intent to kill and endangering no one other than the victim, could no longer support the depraved indifference murder charge of which the *Kibbe* defendants were convicted for having simply left the victim, incapacitated but unharmed, on the roadway. We do not believe the Court of Appeals envisioned or would embrace such a result.

The Court's observation in *Payne* that "depraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York" (*People v Payne, supra* at 270) reflects the reality that, in most cases, when one person shoots and kills another, particularly in the course of a one-on-one confrontation, the shooter acts with the intent to kill and, when the evidence manifestly supports only such an intent, no conviction of depraved indifference murder may be sustained. We do not read *Payne* as standing for the broader proposition that, as a matter of law, a shooting that

results in death may never support a finding that the death was caused with heightened recklessness rather than with an intent to kill. Consequently, we do not understand *Payne* to effect a substantive change in the law of this state.

Lastly, we do not perceive a danger that permitting a shooting death to result in a conviction of depraved indifference murder would allow that crime to serve "as a proxy for intentional murder whenever a person shoots and kills another" (*People v Sanchez*, 98 NY2d 373, 394 [2002] [Rosenblatt, J., dissenting]). In the majority of such cases, the shooting is clearly intended to cause death, and depraved indifference murder should not be charged or submitted for jury consideration. But where a defendant fires a shot at another without a manifest intent to kill, there seems no reason to hold, as a matter of law, that the shooting can never demonstrate the kind of extreme recklessness and wanton disregard for life that is the essence of depraved indifference murder.

For reasons previously stated, we find that the evidence in this case clearly supports a mens rea other than an intent to kill (*see People v Caruso, supra* at 984; *People v Hall*, 309 AD2d 511 [2003]), and the defendant himself, by asking for the submission of manslaughter in the second degree as a lesser-included offense, in effect, conceded as much. Because a rational jury could have concluded, as the jury here did, that the defendant did not intend to kill the victim but rather, with wanton disregard for his life, recklessly engaged in conduct that was imminently dangerous to him, created a very high risk that he would die, and ultimately caused his death, we cannot say that the defendant's conviction was not supported by legally sufficient evidence.

The defendant's remaining contentions, raised in his supplemental pro se brief, are unpreserved for appellate review and, in any event, are without merit. Accordingly, the judgment should be affirmed.

FLORIO, J.P., GOLDSTEIN and MASTRO, JJ., concur.

Ordered that the judgment is affirmed.