184

[853 NYS2d 719]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAL-
COLM BAPTISTE, Appellant.

Third Department, March 27, 2008

## APPEARANCES OF COUNSEL

*Jonathan I. Edelstein*, New York City, for appellant.

*Robert M. Carney, District Attorney*, Schenectady (*Alfred D. Chapleau* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.P.

In *Policano v Herbert* (7 NY3d 588 [2006]), the Court of Appeals indicated that the law on depraved indifference murder has changed and does not apply retroactively to cases that became final prior to the change (*id.* at 602-604). Specifically, the Court concluded that the new rule did not apply to cases that became final prior to the Court's decision in *People v Hafeez* (100 NY2d 253 [2003]), but left open the question—which was not directly before it—of precisely when the law changed such that the new rule became applicable to cases that remained pending on appeal at the time of the change (*Policano v Herbert*, 7 NY3d at 602-603). That question is now squarely presented on this appeal, and we hold that the law changed on October 19, 2004, when the Court decided *People v Payne* (3 NY3d 266 [2004]).

In 1996, defendant was convicted of two counts of depraved indifference murder and one count of criminal possession of a weapon in the second degree based upon an incident in which he fired multiple gunshots into the car of his former girlfriend, Jeanette Cortijo, killing her and her passenger, Chakima Dickerson. It is undisputed that Cortijo's infant son was in the car, and that defendant stated after the shooting that he would have shot Cortijo's son too if he had known that the baby was in the back seat. Upon defendant's June 2003 appeal, this Court affirmed the depraved indifference murder convictions, concluding that they were supported by legally sufficient evidence and not against the weight of the evidence (306 AD2d 562, 564-565 [2003]).[1] The Court of Appeals denied defendant's subsequent application for leave to appeal on January 26, 2004 (1 NY3d 594 [2004]), and his judgment of conviction became final 90 days later, on April 25, 2004 (*see Policano v Herbert*, 7 NY3d at 593).

---

1. The underlying facts are more fully set forth in our prior decision.

In August 2006, defendant moved to set aside his judgment of conviction pursuant to CPL 440.10, arguing that recent Court of Appeals decisions regarding depraved indifference murder represented a retroactive change in the law. County Court denied the motion on the ground that the change in the law did not apply retroactively, and a Justice of this Court thereafter granted defendant permission to appeal.

Defendant asserts that the evidence is legally insufficient to sustain his convictions of depraved indifference murder, as that crime has been redefined by the Court of Appeals in a line of decisions from *Hafeez* to *People v Feingold* (7 NY3d 288 [2006]).[2] We note that a motion to vacate a judgment must be denied if the "issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue" (CPL 440.10 [2] [a]). Thus, in light of our prior determination regarding legal sufficiency on defendant's direct appeal, this CPL article 440 motion must be denied unless there has been a retroactive change in the controlling law since the time of that determination.

In that regard, the Court of Appeals has recently stated that following its decision in *People v Sanchez* (98 NY2d 373 [2002]), "a series of decisions"—specifically, *Hafeez, People v Gonzalez* (1 NY3d 464 [2004]), *Payne* and *People v Suarez* (6 NY3d 202 [2005])—"incrementally 'pointed the law in a different direction,' culminating in [the Court's] explicit overruling of *Register* [i.e. *People v Register* (60 NY2d 270 [1983], *cert denied* 466 US 953 [1984])] and *Sanchez* in *Feingold*" (*Policano v Herbert,* 7 NY3d at 595 [citations omitted]). The Court explained that its "quartet of cases" in *Hafeez, Gonzalez, Payne* and *Suarez* "represent[s] a perceptible, evolving departure from the underpinnings of depraved indifference murder as expressed in *Register* and *Sanchez*" (*id.* at 603; *see People v Stewart,* 36 AD3d 1156, 1160 [2007], *lv denied* 8 NY3d 991 [2007]). The Court then held that the new rule does not apply retroactively to cases that became final before the law changed (*Policano v Herbert,* 7 NY3d at 603-604; *see People v George,* 43 AD3d 560, 561 [2007],

---

**2.** Contrary to the People's assertions, this issue is preserved for our review. While defendant may not have articulated the precise argument that he now makes before us, County Court " 'expressly decided' the question in response to a 'protest by a party' " (*People v Edwards,* 95 NY2d 486, 491 n 2 [2000], quoting CPL 470.05 [2]; *see People v Feingold,* 7 NY3d at 290).

*lvs granted* 9 NY3d 961, 966 [2007]). The Court left open, however, the question of exactly when the law changed and, thus, when the new rule became applicable to nonfinal convictions, stating:

> "individual judges hold differing views as to where along this trajectory a majority of the Court may have effectively passed the point of no return—the limit beyond which, hard as we may have tried, it was simply not possible to reconcile our developing case law with *Register* and *Sanchez*" (*Policano v Herbert*, 7 NY3d at 603; *see People v George*, 43 AD3d at 561-562).

Defendant now asks us to determine the open question, which was not before the Court of Appeals in *Policano*—which case among the quartet of *Hafeez, Gonzalez, Payne* and *Suarez* represented the "point of no return." As noted above, defendant's judgment of conviction became final on April 25, 2004—after *Hafeez* and *Gonzalez* had been decided but prior to the decision in *Payne*. It is not surprising, therefore, that defendant urges us to hold that either *Hafeez* or *Gonzalez* represented the point of no return such that the new rule, as clarified in *Suarez* and *Feingold*, applies in this case. He asserts that the *Register* rule can be summarized simply as a holding that "unless there was absolutely no evidence whatsoever that the defendant might have acted unintentionally" (*Policano v Herbert*, 7 NY3d at 601), he or she could be convicted of depraved indifference murder. Defendant then argues that *Hafeez* and *Gonzalez* are "logically inconsistent" with this rule because, he maintains, there was evidence that the defendants in those cases acted unintentionally. We are unpersuaded and conclude instead that the change in the law occurred with the Court's decision in *People v Payne* (*supra*), as explained below.

Defendant's argument fails for three reasons: first, it oversimplifies the holdings of the Court of Appeals in *Register* and *Sanchez*; second, it fails to acknowledge many of the significant changes to the *Register* doctrine articulated in more recent case law; and, finally, it mischaracterizes the decisions in *Hafeez* and *Gonzalez*. A person is guilty of depraved indifference murder when "[u]nder circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). In *Register* and *Sanchez*, the Court held that

recklessness is the mens rea of depraved indifference murder (*see Policano v Herbert*, 7 NY3d at 597; *People v Sanchez*, 98 NY2d at 376; *People v Register*, 60 NY2d at 278). The Court explained that the phrase "[u]nder circumstances evincing a depraved indifference to human life" constitutes "a definition of the factual setting in which the risk creating conduct must occur" (*People v Register*, 60 NY2d at 276; *accord People v Sanchez*, 98 NY2d at 379). In so holding, the Court rejected a subjective analysis of the crime in which proof was required that the defendant possessed an "uncommonly evil and morally perverse frame of mind" (*People v Sanchez*, 98 NY2d at 396 [Rosenblatt, J., dissenting]). That is, the Court concluded that "the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon *an objective assessment of the degree of risk presented by defendant's reckless conduct*" (*People v Register*, 60 NY2d at 277 [emphasis added and citation omitted]; *accord Policano v Herbert*, 7 NY3d at 597; *People v Sanchez*, 98 NY2d at 379-380).

In *Sanchez*, the Court further indicated that "the crux" of depraved indifference murder "is recklessness exaggerated by indifference to the circumstances objectively demonstrating the enormity of the risk of death from the defendant's conduct" (*People v Sanchez*, 98 NY2d at 380). The Court set forth a framework for analysis that first considered whether "a rational jury could harbor a reasonable doubt that the homicide . . . was intentional" (*id.* at 377). Then, after accepting the jury's finding that the killing therein was *not intentional*, the Court determined whether the defendant's conduct "presented such a transcendent risk of causing . . . death that it readily meets [a] level of manifested depravity" (*id.* at 378). That is, the Court concluded that evidence is legally sufficient to establish depraved indifference to human life if a jury, "once it rejected intentional murder, . . . could reasonably conclude that [the] defendant's conduct was so manifestly destined to result in . . . death as to deserve the same societal condemnation as purposeful homicide" (*id.*; *accord Policano v Herbert*, 7 NY3d at 598-599).

The Court deemed "other circumstances manifesting depravity—including the brutal, barbaric or savage nature of a defendant's reckless conduct—. . . [to be] only 'collateral to the basic proposition of known risk' of death. They are not necessary when the risk of death is manifestly extreme" (*People v Sanchez*, 98 NY2d at 381 [citation omitted]). The Court also

made clear that depravity does not require that "the conduct causing death . . . be 'aimed at no one in particular' [or] 'endanger[ ] indiscriminately the lives of many' " (*id.* at 383 [citation omitted]). Finally, the Court stated—only after accepting that the defendant acted recklessly—that the fact that the defendant's "conduct involved such a high risk of death that it could also lead to the conclusion that it was intentional supports rather than detracts from characterizing it as evincing depraved indifference to human life" (*id.* at 384).

Now, in contrast, the Court of Appeals has expressly overruled *Register* and *Sanchez* to declare that " 'depraved indifference to human life' is a culpable mental state" (*Policano v Herbert*, 7 NY3d at 601, quoting *People v Feingold*, 7 NY3d at 296). Just as significantly, the Court has made clear that a defendant can now be found guilty of depraved indifference murder " 'when but a single person is endangered in only a few rare circumstances' " (*Policano v Herbert*, 7 NY3d at 601, quoting *People v Suarez*, 6 NY3d at 212)—i.e., the circumstances deemed to be " 'collateral' " and "not necessary when the risk of death is manifestly extreme" in *People v Sanchez* (98 NY2d at 381 [citation omitted]). Relatedly, the Court has stated both that " 'a one-on-one shooting or knifing (or similar killing)' "—such as that in *Sanchez*—" 'can almost never qualify as depraved indifference' " and also that proof of "an almost certain risk of death" created by a defendant is not sufficient to establish depravity (*Policano v Herbert*, 7 NY3d at 600-601, quoting *People v Payne*, 3 NY3d at 272; *see People v Stewart*, 36 AD3d at 1160). Furthermore, the Court has explained that it has now rejected the notion that the question of whether a defendant acted intentionally or recklessly in committing murder is "a classic matter for the jury . . . unless there [is] absolutely no evidence whatsoever that the defendant might have acted unintentionally" (*Policano v Herbert*, 7 NY3d at 599-601; *see People v Stewart*, 36 AD3d at 1160-1161). Rather, when a defendant is charged with both intentional murder and depraved indifference murder, "trial courts should presume 'that the defendant's conduct falls within only one category of murder and, unless compelling evidence is presented to the contrary, dismiss the count that is least appropriate to the facts' " (*People v Suarez*, 6 NY3d at 215 [citation omitted]).

In our view, it cannot be said that these changes occurred in *Hafeez* and *Gonzalez*, or that those cases are logically inconsistent with *Sanchez* and *Register*. First, both *Hafeez* and *Gonzalez*

apply the analytical framework set forth in *Sanchez*. Specifically, in each case, the Court treated recklessness as the critical element in depraved indifference murder and, therefore, primarily considered whether "a rational jury could harbor a reasonable doubt that the homicide . . . was intentional" (*People v Sanchez*, 98 NY2d at 377; *see People v Gonzalez*, 1 NY3d at 466-468; *People v Hafeez*, 100 NY2d at 256). Indeed, the concurrence in *Hafeez* acknowledged that the analysis was performed "under *Sanchez*," and objected that the majority had not adopted the view that "the critical element in depraved indifference murder is not recklessness, but depraved indifference" (*People v Hafeez*, 100 NY2d at 260 [Rosenblatt, J., concurring]).

Unlike *Sanchez*, however, the Court expressly found *no record evidence* to support a finding of recklessness in either *Hafeez* or *Gonzalez*. In *Hafeez*, the Court noted that contrary to *Sanchez*, in which "a jury could reasonably find [the] defendant's homicidal level of mental culpability to be reckless rather than intentional" (*People v Hafeez*, 100 NY2d at 256), "[on] this record there exists no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference murder" (*id.* at 259). Similarly, in *Gonzalez*, the Court rejected the People's assertions that the defendant had acted recklessly, rather than intentionally, as "unsupported by any reasonable view of the evidence" (*People v Gonzalez*, 1 NY3d at 467). The Court then explicitly indicated that "[t]here [was] *no record evidence* that [the] defendant 'consciously disregarded' " the certain risk of death created by his actions—i.e., there was no evidence that the defendant acted recklessly with respect to that result (*id.* at 468 [emphasis added]; *see* Penal Law § 15.05 [3]).[3]

Nor can it be said that the decisions in *Hafeez* or *Gonzalez*, which are premised on the rule that an intentional crime can-

---

3. Given the express conclusions by the Court of Appeals that the records in *Hafeez* and *Gonzalez* contained no evidence of recklessness whatsoever, we decline defendant's suggestion herein that we determine, to the contrary, that there *was* record evidence of recklessness in those cases. We note, however, that the facts to which defendant points as establishing recklessness in those cases primarily involve the defendants' protestations that they did not intend to kill the victims. The refusal to rely on such evidence in *Hafeez* and *Gonzalez* is consistent with *Sanchez*, which also declined to rely on similar evidence as establishing recklessness (*People v Sanchez*, 98 NY2d at 377-378, 389 [Smith, J., dissenting]). Perhaps this refusal is explained by the view that "[l]egally sufficient evidence of depraved indifference [murder] cannot be rendered insufficient by a defendant's mere denial of guilt of the charged crime" (*People v Feingold*, 7 NY3d at 303 [Kaye, Ch. J., dissenting]).

not be reckless, conflict with the statement that "conduct involv[ing] such a high risk of death that it could also lead to the conclusion that it was intentional supports rather than detracts from characterizing it as evincing depraved indifference to human life" (*People v Sanchez*, 98 NY2d at 384). Put another way, *Hafeez* and *Gonzalez* did not contradict the principle that evidence that "a defendant's actions created an almost certain risk of death" could establish *depraved indifference to human life* (*Policano v Herbert*, 7 NY3d at 600). That rule, articulated in *Sanchez*, related to depravity, not recklessness, and applied only after the Court could accept as rational a jury's finding that the killing was *unintentional*. There is no indication that the Court, in setting forth that rule, departed from settled law on recklessness or contradicted the principle that "it has never been permissible in New York for a jury to convict a defendant of depraved indifference murder 'where the evidence produced at trial indicated that if the defendant committed the homicide at all, . . . it [was] with the conscious objective of killing the victim' " (*Policano v Herbert*, 7 NY3d at 600; *see People v Gallagher*, 69 NY2d 525, 529 [1987]; *see also People v Wall*, 29 NY2d 863, 864 [1971]; *People v Gonzalez*, 160 AD2d 502, 504 [1990], *lv denied* 76 NY2d 857 [1990]).

Intentional murder and depraved indifference murder had long been recognized as inconsistent counts because "[t]he act is either intended or not intended; it cannot simultaneously be both" reckless and intentional (*People v Gallagher*, 69 NY2d at 529). In our view, the restatement of this longstanding principle in *Hafeez* and *Gonzalez* that a "quintessentially intentional" act cannot also be *reckless* (*People v Gonzalez*, 1 NY3d at 469; *People v Hafeez*, 100 NY2d at 258-259) did not bring those cases into conflict with *Sanchez* or *Register*. In finding recklessness in *Sanchez*, the Court determined that the shooting was "sudden, spontaneous and not well-designed to cause imminent death" (*People v Sanchez*, 98 NY2d at 377); in *Hafeez* and *Gonzalez*, recklessness was lacking where the defendant's conduct had been planned out—in one case for months—and was "specifically designed" to cause death (*People v Gonzalez*, 1 NY3d at 467; *see People v Hafeez*, 100 NY2d at 258).

To be sure, *Hafeez* differs from *Gonzalez*. In the latter case, the Court expressly declined to consider depravity after concluding that there was no evidence of recklessness because "[w]hen a defendant's conscious objective is to cause death, the depravity of the circumstances under which the intentional homicide

is committed is simply irrelevant" (*People v Gonzalez*, 1 NY3d at 468). In *Hafeez*, the Court evidently considered both reckless-ness and depravity, concluding that "there is *no record support* here for the jury's decision that [the] defendant's conduct, or that of his codefendant, was *reckless and depraved*" (*People v Hafeez*, 100 NY2d at 256 [emphasis added]). Neither case, however, departed from the objective analysis set forth in *Register* and *Sanchez* that defined the crime only in terms of reckless-ness and gravity of risk (*cf. People v Suarez*, 6 NY3d at 215). Moreover, neither case adopted the approach used in subsequent cases holding that, regardless of recklessness, depravity is not present absent an evil frame of mind, which can be evinced only in the specific factual circumstances now recognized by the Court (*see People v Gonzalez*, 1 NY3d at 467-468; *People v Hafeez*, 100 NY2d at 258-259; *see also People v Suarez*, 6 NY3d at 222-223, 228 [Graffeo, J., dissenting]).[4]

Rather, that approach was adopted in *Payne*, which marked the first departure away from the analytical framework set forth in *Sanchez*. The Court, in *Payne*, did not treat reckless-ness as the critical element of depraved indifference murder; nor did it consider the threshold question in *Sanchez*, *Hafeez* and *Gonzalez*—whether a jury could rationally conclude that a defendant had acted recklessly, rather than intentionally. While the Court did rely on *Sanchez*, *Hafeez* and *Gonzalez*, it was for the proposition that "depraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York" (*People v Payne*, 3 NY3d at 270). Contrary to the analysis employed in the prior cases, however, the Court treated depravity, rather than recklessness, as the critical element.

This approach is evident from the Court's statement that "if a defendant fatally shoots the intended victim once, it could be murder, manslaughter in the first or second degree or criminal

---

4. As defendant asserts, *Hafeez* and *Gonzalez* distinguished *Sanchez* on the ground that others were endangered—a circumstance that the Court in *Sanchez* deemed unnecessary to a finding of *depravity* (*People v Sanchez*, 98 NY2d at 383). *Hafeez* and *Gonzalez* did not, however, imply such endanger-ment was necessary, and *Sanchez* did not forbid the consideration of danger to others. Thus, the use of this distinction did not, as defendant argues, substantially narrow *Sanchez*. In contrast, *Payne* stated that evidence of oth-ers being endangered *is necessary* to a finding of depravity in cases involving one-on-one killings, directly contradicting *Sanchez* (*compare People v Payne*, 3 NY3d at 272, *with People v Sanchez*, 98 NY2d at 383; *see also People v Atkin-son*, 21 AD3d 145, 157 [2005], *mod* 7 NY3d 765 [2006]).

negligence (or self-defense), but not depraved indifference murder" (*id.* at 272). In other words, even when a defendant's culpable mental state was recklessness—as it would be for manslaughter in the second degree (*see* Penal Law § 125.15 [1])—a defendant cannot be convicted of depraved indifference murder based upon a one-on-one shooting, knifing or similar killing unless "others were endangered" (*People v Payne*, 3 NY3d at 272). The necessary implications of this statement in *Payne*—which, it must be emphasized, presumes that a defendant may have been reckless—are that *depraved indifference to human life* is the threshold element and that element is ordinarily not present in such one-on-one killings. This statement is objectively inconsistent with the decision in *Sanchez* that, regardless of whether others were endangered, a defendant who recklessly shot the victim once could be found to have acted with depraved indifference to human life (*People v Sanchez*, 98 NY2d at 375-376, 378, 383).

Furthermore, *Payne* was the first of the post-*Sanchez* cases in which the Court defined depraved indifference murder in terms other than recklessness and the nature of the risk. As noted above, *Sanchez* indicated that there was no requirement that the defendant's conduct indiscriminately endanger others, and explained that circumstances evincing a defendant's brutality and savagery were collateral and unnecessary (*People v Sanchez*, 98 NY2d at 381, 383-384). In contrast, the decision in *Payne* identified two "species of depraved indifference murder" that are recognized by the Court—those in which a defendant, "lacking the intent to kill . . . shoots into a crowd or otherwise *endangers innocent bystanders*" and those "in which the acts of the defendant are directed against a particular victim but are marked by *uncommon brutality . . .* coupled not with an intent to kill . . . but with depraved indifference to the victim's plight" (*People v Payne*, 3 NY3d at 271 [emphasis added] [describing circumstances exemplified in *People v Jernatowski* (238 NY 188 [1924]), *People v Kibbe* (35 NY2d 407 [1974]) and *People v Poplis* (30 NY2d 85 [1972])]). While it did not rule out a finding of depravity in other instances, *Payne* is the decision in which "the [C]ourt stated for the first time that depraved indifference murder should be restricted to specific and narrow factual circumstances" (Abraham Abramovsky and Jonathan I. Edelstein, *In Search of the Point of No Return: Policano v. Herbert and the Retroactivity of New York's Recent Depraved Indifference Murder Jurisprudence*, 57 Syracuse L Rev 973, 993 [2007]; *see People v Atkinson*, 21 AD3d 145, 157 [2005], *mod* 7 NY3d 765 [2006]).

In shifting its focus from recklessness and gravity of the risk to the existence of the specific factual circumstances deemed unnecessary in *Sanchez*, the decision in *Payne* represents the first instance in which the Court declined to treat the question of whether the defendant acted with a reckless state of mind as "a classic matter for the jury" (*Policano v Herbert*, 7 NY3d at 599). Thereafter, depraved indifference murder may be found only where a defendant's conduct endangers others indiscriminately or in narrowly defined factual circumstances evincing uncommon brutality—set forth in *People v Payne* (3 NY3d at 271) and further clarified in *People v Suarez* (6 NY3d at 212-215)—demonstrating lack of intent combined with " 'a depraved kind of wantonness' " (*People v Payne*, 3 NY3d at 272 [citation omitted]).[5]

These changes in *Payne* are those identified in *Policano v Herbert* (7 NY3d at 599-601) as departing from the underpinnings of depraved indifference murder set forth in *Register* and *Sanchez*. Depraved indifference is now treated as a mental state evinced only by certain narrow factual circumstances, and can no longer be "established by recklessness coupled only with actions that carry even an inevitable risk of death," as in *Sanchez* (*People v Suarez*, 6 NY3d at 214). Moreover, because the crime is defined by certain factual circumstances, it is now generally for the trial judge to determine whether the defendant's conduct is more consistent with depraved indifference murder or

---

**5.** This narrowing in *Payne* of the factual circumstances in which depraved indifference murder could be found was expressly recognized by the Second Department as implying that "a jury is foreclosed from considering a depraved indifference murder charge whenever a death is the result of a one-on-one confrontation in which no other persons are endangered" (*People v Atkinson*, 21 AD3d at 157). That Court, after detailing the "profound impact on seemingly settled New York law" that such a ruling would have, concluded that *Payne*—despite appearances to the contrary—had not been intended to effect a substantive change in the law (*id.* at 159). This uncertainty over the effect of *Payne* was resolved in *Suarez*, which was "rendered four months after *Atkinson* and was in part a reaction to intermediate appellate courts' dismissal of *Payne*" (Abramovsky and Edelstein, 57 Syracuse L Rev, at 996). In our view, *Suarez*—which further detailed the one-on-one, brutality "species" of depraved indifference murder recognized by *Payne*, as well as recognizing the applicability of depraved indifference in the other species of cases identified by *Payne* (those in which a defendant reflects wanton depravity by endangering others indiscriminately)—was simply a reaffirmation and clarification of *Payne* in the face of challenges such as *Atkinson*. Although the Court did not state until *Suarez* that it had "depart[ed] slightly from the *Register* formulation" (*People v Suarez*, 6 NY3d at 215), the departures recognized in *Suarez* were those that the Court had invoked originally in *Payne* and, thus, we do not view *Suarez* as the "point of no return."

intentional murder, rather than leaving the question of the defendant's state of mind to the jury (*see People v Suarez*, 6 NY3d at 215). Inasmuch as the decision in *Payne*, then, was "the point of no return"—the first case that was irreconcilable with *Sanchez*—it marks the cutoff date for application of the new rule. Accordingly, the new rule does not apply in this case, in which defendant's conviction became final approximately six months prior to the decision in *Payne*, and his CPL 440.10 motion was properly denied.

Defendant's remaining arguments are either rendered academic by our decision or, upon consideration, have been found to be lacking in merit.

SPAIN, ROSE, LAHTINEN and KANE, JJ., concur.

Ordered that the order is affirmed.