(January 27, 1994)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RENATO C. JIMINEZ, Appellant. [607 NYS2d 443] —Mikoll, J. Appeal from a judgment of the County Court of Tompkins County (Barrett, J.), rendered June 26, 1991, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the second degree, criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the fourth degree (two counts).

On this appeal defendant, citing to *People v Lypka* (36 NY2d 210), challenges the legality of his warrantless arrest and the seizure of evidence taken from his person and from the vehicle he was driving on the ground that the arresting officer did not have probable cause to arrest him. The arrest was effected by State Police Investigator George Goodall based on information given him by Investigator Douglas Martin. Goodall was informed that a drug transaction had occurred between police informant Craig Alsdorf and codefendant Steven Blake. Blake had secured the drugs from defendant immediately before the transaction. Goodall then proceeded to stop defendant's car and arrest him.

The "fellow officer rule" permits an arresting officer to act on the direction of a fellow officer who possesses probable cause to make an arrest *(see, People v La Mountain,* 155 AD2d 717, 718, *lv denied* 75 NY2d 814). The probable cause determination turns on knowledge possessed by the directing officer, in this case Martin.

At the suppression hearing, Martin testified that on November 14, 1990, he heard Alsdorf make an appointment with Blake over the telephone to purchase drugs that day at 12:30 P.M. Blake stated that his "supply man" would be there at 1:00 P.M. Alsdorf was equipped with a body wire and transmitter and supplied with money to purchase cocaine. Alsdorf was then transported to the area of Blake's home at the proper time. He was seen entering Blake's building. Martin heard Blake say over the wire, "He's here," at which point Martin observed defendant arrive at Blake's home by car. Alsdorf was

told by Blake to leave and get some coffee. Alsdorf complied and returned 10 minutes later. Defendant departed as Alsdorf reentered the premises. Alsdorf bought the drugs from Blake and upon exiting Blake's home turned his purchase over to Martin. The buy tested positive for cocaine.

Martin also heard Blake say over the wire that when Blake wanted to order more cocaine from his supplier, he would call him and order a "policy". Police checks of defendant's auto registration revealed defendant's name and address. A check with defendant's utility service disclosed that his occupation was that of an insurance agent.

Thereafter, another buy between Blake and Alsdorf was set up to occur on November 20, 1990. On that day, defendant was seen arriving at the Blake home by surveillance officers who communicated the information to Martin. Alsdorf was again taken to Blake's home and equipped with a body wire. Alsdorf knocked on Blake's door and Blake answered. Martin heard, over the body wire, Blake say that the supplier of drugs was in his home and that Alsdorf was to remain downstairs. Martin saw defendant leave the premises soon thereafter. A short time later, Martin heard Alsdorf ask Blake, "Is this real primo stuff?," a signal that the transaction had taken place. Goodall was then directed to arrest defendant, whom he was following. Alsdorf left Blake's home and turned over a bag of white powder to Martin, for which Alsdorf paid $1,540 from money supplied by the police. When defendant was arrested, he was found in possession of scales, Inositol (a thinning agent) and money.

We consider the information Martin possessed sufficient to demonstrate the presence of probable cause to believe that defendant was supplying the drugs sold to Alsdorf (see, People v Thompson, 175 AD2d 189, 190, lv denied 79 NY2d 865). Probable cause requires information which makes it reasonably appear more probable than not that a crime has occurred and that defendant is its perpetrator (see, People v Willsey, 144 AD2d 106, 107, lv denied 73 NY2d 985). Because the arrest was properly effected, the items found in defendant's possession were properly seized incident to a lawful arrest; suppression was therefore properly denied.

Defendant also challenges the propriety of tape recordings made of his conversations with another police informant subsequent to his arrest for the two November 1990 drug sales. In the conversations, defendant made admissions indicating an intent to sell cocaine to the new informant and

discussed the possibility of soliciting perjured testimony for his trial in the subject case. Defendant challenges the use of the recording, claiming that it was obtained in violation of his right to counsel. County Court made no factual findings and conclusions of law on the issue after the hearing but, at trial, the recordings were ruled inadmissible as they were related to uncharged crimes. County Court indicated that the People could use the tapes to impeach defendant if he testified or as possible rebuttal. Neither event occurred because defendant elected not to testify.

Defendant contends that this ruling inhibited him from testifying or mounting a meaningful defense. This contention is without merit. The use of the tape recording for impeachment purposes or rebuttal if defendant testified would be entirely appropriate (see, e.g., People v Maerling, 64 NY2d 134, 140; People v Ricco, 56 NY2d 320, 326).

Defendant also urges that County Court erred in denying defendant's request for a mistrial when the People's witness Blake testified that he and defendant used drugs on November 14, 1990 in violation of a prior ruling by the court disallowing such inquiry. In response to defendant's objection and request for a mistrial or, in the alternative, striking the testimony from the record and giving the jury curative instructions, the court elected to do the latter. We conclude that any possible prejudice from the inquiry was sufficiently corrected (see, People v Fischman, 191 AD2d 841, 843, lv denied 81 NY2d 1013). Defendant contends for the first time on appeal that the jurors should have been questioned as to the impact on them of the statement. No such request having been made before County Court, the issue is not preserved on appeal.

Finally, defendant challenges County Court's consideration of the postindictment surveillance tape on the question of sentence. County Court could consider offenses for which defendant was not prosecuted or convicted (see, People v Brunner, 182 AD2d 1123, lv denied 80 NY2d 828). To the extent that this argument appears to be directed to the harshness of sentence, we find the contention without merit. Defendant's sentence was within appropriate statutory guidelines and was not the harshest available. We find no reason to disturb the sentence imposed by County Court

Cardona, P. J., Crew III, White and Weiss, JJ., concur. Ordered that the judgment is affirmed.