■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERIC BIRDSALL, Appellant. [627 NYS2d 118] —Crew III, J. Appeal from a judgment of the County Court of Ulster County (Vogt, J.), rendered January 12, 1993, upon a verdict convicting defendant of the crimes of manslaughter in the second degree and reckless endangerment in the first degree (two counts).

On the evening of April 21, 1991, defendant, Jeffrey Damiano and James Rullan drove in Rullan's car to the Freetown Road overpass in Ulster County. Damiano stood on the north side of the bridge while defendant stood on the south side and watched for approaching traffic. Shortly thereafter, a tractor trailer operated by Keith Dibble approached the overpass on the Thruway below and defendant alerted Damiano to that effect. Damiano then threw a rock off the overpass which struck the tractor trailer shattering the windshield.

Rullan then drove Damiano and defendant to the South Ohioville overpass, stopping along the way to collect additional rocks from a stone wall, one of which was described as being a 52-pound boulder. At about the time that the three were driving to or were at the South Ohioville overpass, James Carroll was approaching the overpass on the Thruway below. As he drew near the overpass, he observed the headlights of a vehicle on the overpass and saw two figures moving to the railing. He then saw one of them make a throwing motion and heard the sound of an explosion on the roof of his car. He also observed baseball size rocks scattered upon the pavement. Moments later, as Karen Zentner approached the same overpass on the Thruway, Damiano put the 52-pound boulder onto the railing and pushed it over the edge, where it crashed through Zentner's windshield killing her instantly.

Defendant was indicted and charged with one count of murder in the second degree and three counts of reckless endangerment in the first degree. Following a jury trial, defendant was convicted of the lesser included offense of manslaughter in the second degree, as well as two counts of reckless endangerment in the first degree.* For the manslaughter conviction, defendant was sentenced to an indeterminate term of imprisonment of 5 to 15 years and for each of the reckless endangerment convictions, defendant was sentenced to 2⅓ to 7 years, with one term running concurrently with the manslaughter sentence and one running consecutively thereto.

---

* The fourth count of the indictment charging reckless endangerment in the first degree was dismissed prior to trial.

On this appeal defendant argues that the evidence at trial was insufficient to warrant conviction as to the third count of the indictment charging reckless endangerment in the first degree, which encompassed the incident involving Carroll. Defendant contends that there was no evidence placing him at the scene when the rock which struck Carroll's car was thrown. We disagree. While it is true that Carroll was not able to identify the two persons he observed on the overpass, defendant's signed statement placed him there at the time the Zentner vehicle was struck with the boulder, as well as at the Freetown Road overpass where the rock throwing incidents began. Rullan testified that he was acting as lookout for Damiano and defendant because they were doing something illegal and did not want to get caught, and he testified as to the three of them looking for and collecting rocks prior to arriving at the South Ohioville overpass. Given that the Carroll vehicle was struck only shortly before Zentner was killed, the jury surely was permitted to infer that the perpetrators were defendant, Damiano and Rullan.

Defendant further contends that the small size of the stone which struck Carroll's vehicle precludes, as a matter of law, a finding that defendant evinced a depraved indifference to human life (Penal Law § 120.25). We find this argument without merit. Determining whether the crime of reckless endangerment occurred requires " 'an objective assessment of the degree of risk presented by defendant's reckless conduct' " (*People v Davis*, 72 NY2d 32, 36, quoting *People v Register*, 60 NY2d 270, 277, *cert denied* 466 US 953), and when making that assessment the evidence must be considered in the light most favorable to the People (*see, People v Tunstall*, 197 AD2d 791, 792, *lv denied* 83 NY2d 811). Clearly, throwing a stone large enough to create a 12-inch dent in the roof of a car created the risk that the driver of such car would be startled upon impact, thereby losing control of the car and becoming involved in a high-speed accident. Thus, the evidence presented was sufficient to permit a jury to find beyond a reasonable doubt that the throwing of such a stone from the overpass created a grave risk of death.

Defendant next contends that County Court erred in denying his motion for a mistrial. At a *Ventimiglia*-type hearing the People sought to prove, on their case-in-chief, "[t]hat on an occasion prior to the Karen Zentner death, [defendant] had previously thrown a rock but someone got hurt and he never did it again". County Court declined to permit such proof. Nevertheless, during examination of a State Trooper concern-

ing certain statements made to him by defendant, he was asked by the prosecution "What happen[ed] next?", to which he responded that defendant stated he had once thrown a rock himself, but someone got hurt and he never did it again. County Court denied a motion for a mistrial and then gave extensive and forceful curative instructions to the jury. Defendant contends this was reversible error. We disagree.

It is axiomatic that the decision to grant or deny a mistrial is within the sound discretion of the trial court and we will not interfere with such decision absent an abuse of discretion (see, People v Ortiz, 54 NY2d 288, 292). Furthermore, where the prejudicial effect upon a jury can be alleviated by curative instructions, the trial court properly may elect to give such instructions rather than declare a mistrial (see, People v Jiminez, 200 AD2d 889, 891, lv denied 83 NY2d 912), and this is true even when the testimony deals with prior acts previously ruled inadmissible (see, People v Richardson, 175 AD2d 143, 144, lv denied 79 NY2d 831). Here, County Court instructed the jury that the testimony had absolutely nothing to do with the case and should be disregarded. The court went on to admonish the jury that the testimony should not in any way enter into their deliberations. Given County Court's clear and unequivocal curative instructions, we are of the view that there was no abuse of discretion in denying defendant's motion for a mistrial. Moreover, the statement attributed to defendant was ambiguous in the sense that, while it indicated he had previously thrown a rock and someone was hurt, it did not implicate any venality and the injury could just as well have been accidental as purposeful. Given that and viewed in light of the entire testimony, we cannot conclude that the alleged prejudicial remarks denied defendant a fair trial (see, People v Nagi, 153 AD2d 964, 965).

The more problematic issue raised has to do with defendant's unredacted statement which was inadvertently, but nevertheless improperly, submitted to the jury. During the course of deliberations the jury requested to see defendant's redacted statement, which had been introduced at trial. The court clerk mistakenly gave the jury defendant's unredacted statement, in which he said that he was present on another occasion when Damiano threw a rock off an overpass. When the error was discovered approximately one hour later, County Court directed the clerk to retrieve the statement and then, in the presence of counsel, separately interviewed each juror. As the result of those interviews, it developed that three jurors had read the unredacted statement and two of them

retained some substantive knowledge of what they had read. None of the three had discussed the statement with the other jurors and each assured County Court that they would not allow anything they had read to influence their deliberations. As the result of those assurances, County Court denied defendant's motion for a mistrial.

In support of his contention that a mistrial should have been granted, defendant relies upon *People v Bouton* (50 NY2d 130). In that case a number of exhibits, which had not been admitted into evidence, were delivered to the jury. Ultimately the clerk discovered the error and made an unauthorized entry into the jury room to retrieve the materials, at which time she admonished the jurors for having looked at them. In reversing the defendant's conviction, the Court of Appeals placed great emphasis upon the violation of the sanctity of the confidentiality of jury deliberations by the unauthorized entry into the jury room and upon the fact that the clerk's admonishment may have "inhibited candid responses by the jurors at the court's subsequent hearing on the incident" *(supra,* at 137). Here there was no unauthorized intrusion upon the jury and no chilling admonishment by the clerk. Moreover, the Court of Appeals has "declined to fashion any concrete test for assessing claims for improper jury influence" *(People v Testa,* 61 NY2d 1008, 1009) and has determined that " '[i]n each case the facts must be examined to determine the nature of the material placed before the jury and the likelihood that prejudice would be engendered' " *(supra,* at 1009, quoting *People v Brown,* 48 NY2d 388, 394). Given that, we are of the view that the overwhelming evidence presented in this case establishes that there is no significant probability that the jury would have acquitted defendant but for the error of which he complains *(see, People v Crimmins,* 36 NY2d 230, 242).

Mikoll, J. P., Mercure and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed.

