■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLAY PARKER, Also Known as TRIFE, Appellant. [814 NYS2d 818]—

Carpinello, J. Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered May 10, 2004, upon a verdict convicting defendant of the crime of murder in the second degree.

Defendant was indicted for both intentional and depraved indifference murder as a result of an incident in the early morning hours of December 27, 2002 wherein he shot and killed Pat Johnson (hereinafter the victim). Following a jury trial, he was acquitted of intentional murder but found guilty of depraved indifference murder. Sentenced to a prison term of 25 years to life, he now appeals. We affirm.

There can be no doubt that "[w]hat precisely distinguishes depraved indifference murder from other homicides has of late generated significant discussion" (*People v Suarez*, 6 NY3d 202, 207 [2005]; *see People v Payne*, 3 NY3d 266 [2004]; *People v Gonzalez*, 1 NY3d 464 [2004]; *People v Hafeez*, 100 NY2d 253 [2003]; *People v Sanchez*, 98 NY2d 373 [2002]). There can also

be little doubt that the Court of Appeals' recent pronouncements on the matter will all but put an end, except in the rarest of cases, to the People's use of "twin indictments" wherein both intentional and depraved indifference murder are charged. However, the issue before this Court is limited to whether defendant's conviction for depraved indifference murder, having himself been indicted in such a twin indictment, is against the weight of the evidence.[1]

Upon our review of the trial evidence, in conjunction with the definition of depraved indifference as charged to the jury,[2] we find that the verdict was not against the weight of the evidence. In considering the proof in a neutral light and according due deference to the jury's opportunity to hear the testimony and observe the demeanor of all witnesses (*see e.g. People v Mateo*, 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004]; *People v Cahill*, 2 NY3d 14, 58 [2003]; *People v Bleakley*, 69 NY2d 490, 495 [1987]), we are satisfied that this verdict is not against the weight of the evidence and specifically reject the claim that the jury failed to give the evidence the weight that it should be accorded.

The evidence at trial established that defendant[3] fired but a single shot across the street where several other people besides the victim were present after a night of drinking alcohol and

---

**1.** While defendant argues that the evidence was legally insufficient to support his conviction of depraved indifference murder, his general motions to dismiss upon the close of the People's case and again at the close of all proof failed to properly preserve this specific claim (*see People v Gray*, 86 NY2d 10, 19 [1995]; *People v Gibbons*, 15 AD3d 196 [2005], *lv denied* 4 NY3d 886 [2005]; *compare People v Breedlove*, 26 AD3d 641 [2006]). Under the circumstances of this case, we decline to reverse defendant's conviction in the interest of justice on this basis.

**2.** In conducting a weight of the evidence analysis, this Court " 'is constrained to weigh the evidence in light of the elements of the crime as charged without objection by defendant' " (*People v Cooper*, 88 NY2d 1056, 1058 [1996], quoting *People v Noble*, 86 NY2d 814, 815 [1995]). Here, the jury was charged that depravity could be found where the circumstances surrounding the reckless conduct "made it so uncaring, so callous, so dangerous, and so inhuman as to demonstrate an attitude of total and utter disregard for the life of the person or persons endangered." In our view, the evidence supported a finding of depraved indifference as so defined.

**3.** Notably, not one witness identified defendant as the person who fired the shot that morning and no witness, including the victim's friend and girlfriend who were present when the shot was fired, even knew that he was fatally injured until the next morning. Defendant testified on his own behalf and denied that he was the shooter. The jury's acquittal on the intentional murder count and guilty verdict on the depraved indifference count signifies its conclusion that the evidence nevertheless established defendant as the shooter that morning but left a reasonable doubt as to whether he acted with the intent to kill the victim.

smoking marihuana (*see People v Fenner*, 61 NY2d 971 [1984]; *People v Jernatowski*, 238 NY 188 [1924]). Just minutes earlier, defendant and his companions had stolen two separate vehicles outside a nearby pizza shop, one of which belonged to the victim. Upon locating these vehicles outside the apartment of defendant's friend, the victim punched another of defendant's friends in the face, knocking him to the ground. It was then that the single shot was fired.[4]

The distance between defendant, who was a novice user of the subject rifle, and the people across the street was hardly close. All of the witnesses testified that the "shooter" (*see* n 3, *supra*) was standing inside the hallway of a residence on the opposite side of the street. The victim, his girlfriend, their male companion and two of defendant's own friends were located across the street from this residence near the victim's parked car. Another of defendant's friends was also in the immediate vicinity. Moreover, it was dark outside, the street was dimly lit and the weather was described as "a blizzard." In our view, defendant's conduct in firing from a doorway across the street in a direction where several people were present on a dark, snowy night established his indifference to the grave risk of death posed by his actions.

While the jury heard testimony from one witness, who acknowledged that he had changed his statement to police a couple of times and who was himself threatened with being charged with murder, that defendant allegedly told him that he put the scope on the victim's chest that morning, they also heard evidence from the victim's girlfriend that the victim was pacing back and forth on the street at the time the shot was fired. The jury further heard testimony that, just minutes before the shooting, defendant refused to participate in his companions' decision to steal the victim's car because he and the victim had been childhood friends. Thus, even though defendant would not participate in the relatively petty offense of stealing the victim's car, defendant asserts that the *only* conclusion to be drawn from the evidence is that he acted only with intent to kill him just minutes later (*compare People v Hafeez*, 100 NY2d 253 [2003], *supra*; *Policano v Herbert*, 430 F3d 82 [2005]). The jury obviously, and reasonably in our view, disregarded this scenario which was within its province as the trier of fact.

---

4. The victim ran away and was later discovered lying face down in a snowbank, moving and attempting to speak. He ultimately died from massive blood loss. The pathologist who conducted the autopsy testified that the victim's injury was of the type that could be treated and was not necessarily fatal.

In short, this was not a preplanned revenge shooting (*cf. id.*) or a one-on-one, point-blank shooting between feuding individuals, but a sudden and spontaneous act which endangered numerous people such that the verdict of depraved indifference, as opposed to an intentional killing, could have been reached (*see People v Sanchez*, 98 NY2d 373 [2002], *supra*; *People v Fenner, supra*; *People v Jernatowski, supra*; *People v Baptiste*, 306 AD2d 562 [2003], *lv denied* 1 NY3d 594 [2004]; *cf. People v Payne*, 3 NY3d 266 [2004], *supra*; *People v Gonzalez*, 1 NY3d 464 [2004], *supra*). In other words, there is ample record support for the jury's decision that defendant's conduct that morning was reckless and depraved rather than intentional and, therefore, the verdict must be upheld.

As a final matter, we note that the dissent places some reliance on comments made during summations when analyzing whether this verdict is against the weight of the evidence. In our view, such comments are irrelevant to the question of whether the jury's verdict is against the weight of the evidence inasmuch as comments made in summation are simply not evidence (*see generally People v Roche*, 98 NY2d 70, 78 [2002]). Moreover, even though counsel for both sides spent considerable time marshaling the evidence vis-à-vis the intentional murder count in their summations, once the jury concluded that intent was not proven, it was capably left to its own deliberative devices in considering the depraved indifference count, regardless of whether it had been given guidance on this issue during summations. To this end, we find it telling that County Court, which itself had the opportunity to hear the evidence and was equally familiar with the facts of the case, noted on the record in denying a defense motion to set aside the verdict that "the jury reasonably could have concluded that this was a depraved indifference situation and not, as [counsel] indicate[d] in [their] closing arguments, an intentional murder under the first count of the indictment."

Defendant's remaining contentions, including the claim that his sentence was harsh and excessive, have been reviewed and determined to be unpersuasive.

Peters and Kane, JJ., concur.

Mercure, J.P. (dissenting). Because the majority's decision is premised solely on *People v Sanchez* (98 NY2d 373 [2002]) and ignores the subsequent discussion of the law in the cases of *People v Suarez* (6 NY3d 202 [2005]) and *People v Payne* (3 NY3d 266 [2004]), we respectfully dissent. Based upon *Suarez* and *Payne*, we agree with defendant that because his conviction of depraved indifference murder is not supported by legally suf-

ficient evidence, it is necessarily against the weight of the evidence and, thus, we would reverse his conviction and dismiss the indictment.

A person is guilty of depraved indifference murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). The Court of Appeals has underscored that " '[d]epraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York' " (*People v Suarez, supra* at 207, quoting *People v Payne, supra* at 270). As particularly relevant here, the Court has stated that "[t]he use of a weapon can never result in depraved indifference murder when, as here, there is a manifest intent to kill. . . . [I]f a defendant fatally shoots the intended victim once, it could be murder, manslaughter in the first or second degree or criminal negligence (or self-defense), but not depraved indifference murder" (*People v Payne, supra* at 271-272; *see People v Suarez, supra* at 208). A given result cannot be simultaneously both intended and unintended (*see People v Gallagher*, 69 NY2d 525, 529 [1987]) and, thus, when the defendant is: "indifferent to whether death will likely result from his or her conduct— including with respect to a single victim—depraved indifference may be manifest. But where . . . a defendant's conduct is *specifically designed* to cause the death of the victim, it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct" (*People v Gonzalez*, 1 NY3d 464, 467 [2004] [emphasis added]).

Further, the Court of Appeals has most recently clarified that beyond a grave risk of death and recklessness, "the statutory provision that a defendant act '[u]nder circumstances evincing a depraved indifference to human life' constitutes an additional requirement of the crime" (*People v Suarez, supra* at 214). The Court explained that this additional element "reflect[s] wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target of the perpetrator's inexcusable acts" (*id.* at 213). This additional element is said to "[r]eflect[ ] wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts" (*id.* at 214; *but see People v Sanchez, supra* at 379-383; *People v Roe*, 74 NY2d 20, 24 [1989]; *People v Gomez*, 65 NY2d 9, 11 [1985]; *People v Register*, 60 NY2d 270, 276-278 [1983], *cert denied* 466 US 953 [1984]).

Here, there is no proof of either recklessness or depravity—

elements that were charged to the jury, without objection from defendant. County Court charged the jury that recklessness causing a grave risk of death and circumstances evincing a depraved indifference to human life are elements of depraved indifference murder. In addition to the portion of the court's charge that the majority quotes (n 2, *supra*), County Court instructed the jury that depravity could be found only where the circumstances evince "conduct, which beyond being reckless, is so wanton, so deficient in moral sense and concern, so devoid of regard for the life or lives of others as to equal in blameworthiness intentional conduct which produces the same result." This is nearly identical language to that set forth by the Court of Appeals in *People v Suarez* (*supra* at 214). Inasmuch as we are " 'constrained to weigh the evidence in light of the elements of the crime as charged without objection by defendant' " (*People v Cooper*, 88 NY2d 1056, 1058 [1996], quoting *People v Noble*, 86 NY2d 814, 815 [1995]), we find *Suarez* to be highly relevant to an analysis of whether the evidence supports a finding of depraved indifference in this case and cannot join any approach that fails to meaningfully acknowledge *Payne* and *Suarez*.

With these principles in mind, the evidence that, in our view, compels a reversal is set forth as follows. At a party for Samanda Shaw on the night of the shooting, James Taylor observed defendant holding a carbine-type rifle with a scope on it. Later that evening, defendant and Shaw, accompanied by two friends known as JT and MG, went to a pizza shop. Rather than wait for a cab when they wanted to leave, the group decided to steal two vehicles. Shaw, JT and MG left in a Jeep Cherokee that belonged to the victim while defendant took a car owned by Oneil Smith. Once the group returned to Shaw's apartment, Shaw, MG and JT remained outside, while defendant first went inside and then waited for the victim on the steps of the building.

After they were informed that their vehicles had been stolen, Smith and the victim borrowed a car, met the victim's girlfriend, Laquisha Wright, and drove to Shaw's apartment. When they observed Shaw and MG getting out of the victim's Jeep, the victim punched MG in the face, knocking him to the ground. Witnesses then heard a gunshot fired from the doorway of Shaw's apartment and, immediately thereafter, saw defendant exiting the darkened doorway of the apartment. The victim fled and was ultimately taken to the emergency room, where he died from massive blood loss due to a gunshot wound of the right lung. Once the group was back in the apartment, defendant told

Shaw and JT that he had shot and killed the victim, informing JT that he had the scope of the rifle on the victim's chest and, later, also told Shaw's mother that he had shot and killed someone.

Nevertheless, at trial, defendant presented a defense of misidentification. He maintained that when the fatal shot was fired, he was assisting JT in carrying MG into Shaw's apartment and that he heard a gunshot come from behind him but did not know who fired the shot. Thereafter, in summation, defense counsel asserted to the jury: "[I]n this case[,] you either pick the first count of the indictment [charging intentional murder], in fairness, or none at all. . . . If someone takes a rifle with a scope and aims it at another human being and shoots them in the chest, you can bet your bottom dollar they are trying to kill him. So your job in this case, ladies and gentlemen, is really, simply stated but difficult to determine, was [defendant] the shooter?" In response, the People agreed with defense counsel, stating that "[w]hoever pointed that gun, whoever put that dot on that chest and squeezed that trigger intended to kill [the victim]." Nevertheless, the People urged that "in this case you should find that this defendant . . . intentionally caused the death of [the victim]. And if you don't find that because you don't know what was in his head, you should find that it was depraved indifference murder and he acted depraved."

On appeal and contrary to their argument before the jury that it should find depraved indifference murder as a fallback to intentional murder, the People argue—and the majority agrees—that the evidence at trial supports a finding of recklessness. Specifically, the majority concludes that both recklessness and depravity can be inferred from the evidence indicating that defendant fired a single shot from a darkened entryway in a building across a city street during bad weather and with other bystanders—Wright, Shaw, MG, Smith and JT—present. From these facts, the majority finds an instantaneous, impulsive shooting designed to disable, wound or frighten the victim, rather than to kill him (*see People v Sanchez*, 98 NY2d 373, 377-378 [2005], *supra*). Using the most recent Court of Appeals precedent as a guide, however, it cannot be said that there is any record evidence establishing either defendant's conscious disregard of the risk of death to the victim or his depravity (*see People v Suarez*, 6 NY3d 202, 216 [2005], *supra*; *People v Payne*, 3 NY3d 266, 270-273 [2004], *supra*; *People v Hafeez*, 100 NY2d 253, 258-259 [2003]).

The claims that the shooting was impulsive and spontaneous are contradicted by defendant's admissions that when he ar-

rived back at Shaw's apartment, he first went inside where he knew the gun was located, then went back to the doorway of the apartment to look both ways on the street because he was waiting for the victim and knew that the victim would be angry and coming to retrieve the stolen vehicles. Any suggestion that defendant may not have wanted to kill the victim because of a prior social relationship is outweighed by his statements that he killed the victim as revenge for punching MG and because he did not like people from the area where defendant and the victim had both grown up. Moreover, defendant told JT that he had the scope of the nine-millimeter rifle on the victim's chest, demonstrating that the shooting was specifically designed to cause the victim's death, despite the testimony that the wound was of the type that could be treated if the victim received immediate medical attention (*see People v Gonzalez*, 1 NY3d 464, 468-469 [2004], *supra*; *Policano v Herbert*, 430 F3d 82, 89-91 [2005]; *cf. People v Sanchez, supra* at 377 [in which firing from behind a partly closed door and striking the victim at an angle was held to establish indifference to the grave risk of death to the victim]). JT's testimony regarding the use of the scope is consistent with Shaw's testimony that just after the shot, she saw someone in the doorway of her apartment building holding a rifle with a scope on it. As noted above, Shaw, MG and Shaw's mother also testified consistently with JT that defendant bragged about killing the victim. In addition, after the victim punched MG but just prior to the shooting, Wright, who had known defendant for many years, heard defendant state, "I got something for [him]."

In short, there is no evidence suggesting that the shooting was anything other than intentional and designed to kill. At trial, defendant relied only on a misidentification defense, which the jury rejected and the majority now necessarily concedes was meritless in concluding that defendant committed depraved indifference murder (*see People v Gonzalez, supra* at 469; *Policano v Herbert, supra* at 89 n 3). We do not agree with the majority that proof suggesting that others were endangered can supply evidence of the element of recklessness here. While the majority relies heavily on the presence of bystanders at the time of the shooting as proof of defendant's indifference to the grave risk of death posed by his actions, defendant's use of the red-dot scope to aim the bullet directly at the victim's chest negates any suggestion that he acted with indifference, as opposed to intent to kill. The facts of this case cannot be equated to the circumstances where "a defendant—*unconcerned with the consequences*— . . . fires into a crowd [or] drives an automobile down a crowded sidewalk at high speed" (*People v Gonzalez, supra* at

467 [citation omitted; emphasis added]). Rather, the shooting was well-designed to cause the victim's death and there is no evidence that defendant acted with conscious disregard or indifference to that result, regardless of whether others were endangered.[1]

Accordingly, we conclude that, as acknowledged *by the People* at trial, the record evidence indicates that defendant, the person who "pointed that gun, who[ ] put that dot on that chest and squeezed that trigger[,] intended to kill [the victim]." Absent evidence establishing the necessary element of recklessness, the People's further argument to the jury that if it did not find intentional murder "because you don't know what was in [defendant's] head, you should find that it was depraved indifference murder," was both misleading and specious.[2] Depraved indifference murder is not a fallback theory of intentional murder; nor is it a lesser degree of intentional murder (*see People v Suarez, supra* at 207, 211; *People v Payne, supra* at 272). Because "this 'was a quintessentially intentional attack directed solely at the victim,' " the depraved indifference count should have been dismissed by the trial court (*People v Gonzalez, supra* at 469 [citation omitted]).

Moreover, even if the evidence supported a finding of recklessness here, the People failed to establish the additional element of depravity (uncommon brutality and inhuman cruelty) necessary to support a finding of depraved indifference murder. Defendant's actions—waiting for the victim and shooting him in the chest after the victim punched a friend—do not reflect the wantonness or inhumanity necessary to establish the element of depravity as charged to the jury (*People v Suarez*, 6 NY3d 202, 214 [2005], *supra*). In *Suarez*, the Court made clear that depraved indifference may be charged only in the "unusual case" in which the proof evinces that the defendant possessed "an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply

---

1. In any event, the record does not support an inference that defendant endangered others by firing the gun into a crowded street. The only bystanders were Shaw, Wright, Smith, JT and MG. There is conflicting testimony regarding whether Shaw or Wright remained anywhere near the victim and his parked car; Smith had walked up the street; and JT was dragging MG up the stairs of Shaw's apartment building at the time of the shooting.

2. We note that "statements in a summation are not evidence" (*People v Roche*, 98 NY2d 70, 78 [2002]). We refer to the summation comments here because they aptly illustrate the inconsistency between the People's theory at trial—that the murder could have been only intentional—and their argument before us on appeal that the evidence supports a finding that defendant acted recklessly but not intentionally (*cf. id.* at 78).

doesn't care whether grievous harm results or not" (*id.* at 214; *see People v Payne*, 3 NY3d 266, 272 [2004], *supra*). This is simply not one of the "few rare circumstances" in which the People demonstrated depraved indifference (*People v Suarez, supra* at 212). In the absence of any such evidence, conduct that recklessly causes a death will support a conviction only of manslaughter in the second degree (*see* Penal Law § 125.15; *People v Suarez, supra* at 213-214)—a crime that was not submitted to the jury.

Finally, we cannot overlook defense counsel's error in permitting the "twin counts" of intentional homicide and depraved indifference murder to be submitted to the jury without objection. It has long been established that one cannot simultaneously act intentionally and recklessly and that recklessness is an element of depraved indifference murder (*see e.g. People v Gallagher*, 69 NY2d 525, 529 [1987], *supra*). Despite agreeing with the People that defendant was guilty of an intentional crime or no other, defense counsel failed to urge County Court to dismiss the depraved indifference murder count that both sides acknowledged to be inapplicable to the facts (*see People v Suarez, supra* at 215). In the absence of a reasonable explanation for this failure to raise a dispositive defense, this single error deprived defendant of his constitutional right to the effective assistance of counsel, further requiring reversal here (*see People v Turner*, 5 NY3d 476, 480 [2005]).

For the reasons stated above and on constraint of *People v Payne* (*supra*) and *People v Suarez* (*supra*), we cannot subscribe to the majority's position.

Crew III, J., concurs. Ordered that the judgment is affirmed.