■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHERROD CRAFT, Appellant. [827 NYS2d 376]—

Lahtinen, J. Appeal from a judgment of the Supreme Court (Teresi, J.), rendered July 17, 2003 in Albany County, upon a verdict convicting defendant of the crimes of murder in the second degree and attempted murder in the second degree.

On the evening of June 3, 2001, Javan Morton was sitting on the steps of a flowershop on the corner of Elizabeth Street and Third Avenue in the City of Albany when teenagers Shakira Chambers and Stephanie VanDeBogart saw him as they were out for a walk. Morton warned the girls of danger and a possible retaliatory shooting because someone in a gang from "uptown" had been shot earlier in the day and trouble was expected "downtown." Despite the warning, Chambers joined him on the steps as VanDeBogart stood nearby. Shortly thereafter, two hooded men appeared, launching a volley of at least a

dozen shots from less than 10 feet away. The gunfire wounded Morton and killed Chambers.

An investigation led police to identify defendant as one of the suspects and, during questioning by a police detective in July 2001, defendant reportedly stated, "I didn't mean to shoot the girl." Defendant was thereafter indicted for both intentional murder (second degree) and depraved indifference murder (second degree) regarding Chambers, attempted murder (second degree) of Morton, and criminal possession of a weapon in the third degree. A jury convicted him of depraved indifference murder and attempted murder.[1] He was sentenced to consecutive prison terms of 25 years to life and now appeals.

Defendant argues that the evidence was legally insufficient to support his conviction for depraved indifference murder. The People counter that this issue was not properly preserved for review since defendant made only a general dismissal motion. We recently held in a case challenging the legal sufficiency of the evidence in an appeal from a depraved indifference murder conviction that such issue had "not been properly preserved for judicial review because [defendant] failed to seek dismissal at the conclusion of the People's case or at the end of the trial by making a detailed, specific motion addressed to the claimed deficiencies in the evidence" (*People v Riddick*, 34 AD3d 923, 924 [2006]; *see People v Palmer*, 34 AD3d 701 [2006]; *People v Parker*, 29 AD3d 1161, 1162 n 1 [2006], *affd* 7 NY3d 907 [2006]; *see also People v Gray*, 86 NY2d 10, 18-20 [1995]). Such precedent compels the conclusion that the issue was not properly preserved in the current case.

Defendant alternatively requests that we consider the issue and exercise our discretionary power (*see* CPL 470.15 [1]; *People v Robinson*, 36 NY2d 224, 228 [1975]; *see also People v Riddick, supra*). However, upon reviewing the issue, we are unpersuaded that reversal or modification is required. As in any challenge based on legal sufficiency of a jury verdict in a criminal case, the evidence is viewed in the light most favorable to the prosecution (*see People v Williams*, 84 NY2d 925, 926 [1994]). The proof necessary to sustain a depraved indifference murder conviction has been discussed in a series of recent cases (*see People v Suarez*, 6 NY3d 202 [2005]; *People v Payne*, 3 NY3d 266 [2004]; *People v Gonzalez*, 1 NY3d 464 [2004]; *People v Hafeez*, 100 NY2d 253 [2003]; *see also People v Feingold*, 7 NY3d 288 [2006]; *Policano v Herbert*, 7 NY3d 588 [2006]; *People v Camp-*

---

**1.** The other individual involved in the shooting was tried separately and convicted of various crimes for his role. We recently affirmed that conviction (*People v Davis*, 23 AD3d 833 [2005], *lv denied* 6 NY3d 811 [2006]).

*bell,* 33 AD3d 716 [2006]). The use of depraved indifference murder has been significantly curtailed, particularly as to one-on-one shootings or stabbings where the intended victim is, in fact, the person killed (*see People v Feingold, supra* at 294; *People v Suarez, supra* at 207-208; *People v Payne, supra* at 272). Depraved indifference murder involves an unintentional killing where the defendant's conduct is "so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another" (*People v Suarez, supra* at 211 [internal quotation marks and citations omitted]). Examples include, among others, where "the defendant fired shots into a house, killing the wife of a man with whom he had a confrontation," the "defendant fired into a fleeing crowd," and the "defendant shot and killed an innocent bystander during a gun battle" (*People v Payne, supra* at 271).

There is no view of the evidence that permits the conclusion that defendant did not intend to shoot Morton. Although Morton was the intended victim, he was not the one who died in this shooting. Chambers died. A defendant can intend to cause the death of one person while simultaneously engaging in conduct that recklessly creates a grave risk of death to another (*see People v Trappier,* 87 NY2d 55, 57 [1995]). The continued viability of this principle was inferentially reaffirmed in *People v Suarez* (*supra*), where the Court noted that "the mere presence of third persons at the scene of a killing does not convert an intentional homicide directed at a particular victim into depraved indifference murder unless others are *actually endangered*" (*id.* at 213 n 7).[2] While the legal fiction of transferred intent could have been considered (*see People v Fernandez,* 88 NY2d 777, 781-782 [1996]), that theory was not charged to the jury (*see* CJI2d[NY] Penal Law § 125.25 [1]; *see also People v Russell,* 91 NY2d 280 [1998] [upholding depraved indifference murder conviction in case where charged second degree murder

---

2. We adopted this view in *People v Parker* (*supra*) and held that a defendant's disregard of the safety of a small number of innocent bystanders may constitute both recklessness and depraved indifference within the meaning of the statute despite strong proof of intent to kill (*id.* at 1163). Although the Court of Appeals subsequently called into question the continued validity of the above-quoted language in *Suarez* (*see People v Feingold, supra* at 295, 297 [stating that while constituting "circumstantial proof of depraved indifference," the fact that even "a large number of people were endangered does not mean that defendant was depravedly indifferent"]), the Court has expressly rejected the assertion that it has overruled *Suarez* (*see People v Feingold, supra* at 294 n 2). In our view, *Parker* and *Suarez* remain good law and provide support for the result herein.

under transferred intent had been dismissed]) and there was no objection to such aspect of the charge (cf. *People v Cooper*, 88 NY2d 1056, 1058 [1996]; *People v Dekle*, 56 NY2d 835, 837 [1982]).[3]

The evidence supports the jury determination (made consistent with the charge provided by Supreme Court) that defendant did not intend to kill Chambers, but that his actions directed toward Morton created a grave risk of Chambers' death. Chambers and VanDeBogart had been walking in the vicinity and stopped to talk to Morton. Soon thereafter, the assailants arrived intent on harming Morton to avenge a gang slaying that had occurred earlier that day. Despite the close proximity of Chambers and VanDeBogart to Morton, the assailants commenced their avengeful act and, even when Morton ostensibly pulled Chambers in front of him as a shield, they continued firing. The fact that Morton was the intended target is reflected by, among other evidence, the way events unfolded and also by subsequent statements in which defendant related that no harm was intended for Chambers. Moreover, the fact that defendant's moral sense was so debased that he continued shooting after Chambers was being used as a shield does not transform his conduct toward her in mid-assault from depraved indifference to intentional. Instead, it buttresses the depraved indifference mens rea by "[r]eflecting wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts" (*People v Suarez*, 6 NY3d 202, 214 [2005], *supra*). This evidence is sufficient to establish that defendant, while intending to kill Morton, acted with wantonness and a total disregard of the life of Chambers.[4]

The remaining issues do not require protracted discussion. Deferring to the credibility determinations made by Supreme Court at the suppression hearing, there was ample evidence to uphold its determination that defendant was not in custody at the time he made an incriminating statement (*see e.g. People v Winchell*, 64 NY2d 826, 827 [1985]; *People v Langlois*, 17 AD3d 772, 773-774 [2005]; *People v Kreydatus*, 305 AD2d 935, 936

---

**3.** Supreme Court charged that the following two elements were necessary for a conviction of intentional murder:

"1. That on July [sic] 3, 2001, in Albany County, defendant, Sherrod Craft, personally or acting in concert with another caused the death of one Shakira Chambers.

"2. That he did so with the intent to cause the death of Shakira Chambers."

**4.** Although defendant references a weight of the evidence argument only in the conclusion of his brief and does not otherwise argue such issue in the body of the brief, we nevertheless have weighed the evidence in the record and find his argument unpersuasive.

[2003], *lv denied* 100 NY2d 595 [2003]; *People v MacGilfrey*, 288 AD2d 554, 556 [2001], *lv denied* 97 NY2d 757 [2002]). It was not reversible error to admit evidence regarding gang activity, which provided necessary background information and for which Supreme Court gave the jury repeated cautionary instructions (*see People v Williams*, 28 AD3d 1005, 1008 [2006], *lv denied* 7 NY3d 819 [2006]; *People v Oliver*, 19 AD3d 512, 512-513 [2005], *lv denied* 5 NY3d 808 [2005]). Supreme Court acted within its discretion in permitting questioning on redirect regarding a statement made to an investigating officer which, although hearsay, was an area to which defense counsel had opened the door during cross-examination of that officer (*see People v Massie*, 2 NY3d 179, 184-185 [2004]; *People v Melendez*, 55 NY2d 445, 451 [1982]; *People v Vazquez*, 28 AD3d 1100, 1100-1101 [2006]; *cf. People v Ryan*, 17 AD3d 1, 5-6 [2005]). Finally, we are unpersuaded that it was improper to impose consecutive sentences (*see People v Davis*, 23 AD3d 833, 835 [2005], *lv denied* 6 NY3d 811 [2006]).

Mercure, J.P., Crew III, Carpinello and Kane, JJ., concur. Ordered that the judgment is affirmed.

