■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DASHAWN CARTER, Also Known as NOODLES, Appellant. [838 NYS2d 192]—

Kane, J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered April 15, 2005 in Albany County, upon a verdict convicting defendant of the crimes of murder in the

second degree and criminal possession of a weapon in the second degree.

After many hours of drinking at the Twilight Lounge in the City of Albany, defendant had words with Courtney Young about defendant's repeated attempts to talk to and buy drinks for Young's female companions. The bartender had defendant escorted out, but when the bar closed a short time later defendant was standing outside. As Young and his companions left the bar, defendant pulled a gun from his waist and began shooting. Several bullets struck Young, resulting in his death. A jury acquitted defendant of intentional murder, but convicted him of depraved indifference murder and criminal possession of a weapon in the second degree. Following sentencing as a second felony offender, defendant appeals.

Several of defendant's contentions are unpreserved for appellate review because he failed to properly raise them before Supreme Court (*see* CPL 470.05 [2]). Defendant did not object to the court's refusal to give an intoxication instruction related to the depraved indifference count, and in fact acknowledged that this refusal was required by the state of the law at the time. He also failed to object to testimony by the People's fingerprint expert that defendant's fingerprints were already in the criminal justice database. Defendant's general motions to dismiss upon the close of the People's proof and again at the conclusion of all proof were insufficient to preserve the specific claim that the evidence supported only an intentional killing and not depraved indifference murder; preservation requires a detailed motion addressing the specific deficiencies in the evidence (*see People v Craft*, 36 AD3d 1145, 1146 [2007]; *People v Parker*, 29 AD3d 1161, 1162 n 1 [2006], *affd* 7 NY3d 907 [2006]; *see also People v Riddick*, 34 AD3d 923, 924-925 [2006]). We decline to exercise our interest of justice jurisdiction to reach these issues (*see* CPL 470.15 [1], [6] [a]).

Weighing the evidence in light of the elements as charged to the jury without objection by defendant, we find the conviction of depraved indifference murder supported by the evidence (*see People v Cooper*, 88 NY2d 1056, 1058 [1996]; *People v Danielson*, 40 AD3d 174, 176 [2007]; *People v Parker, supra* at 1162 n 2). Defendant attempts to portray this as a one-on-one, point blank shooting of a single individual, which would imply that the killing could only be intentional (*see People v Payne*, 3 NY3d 266, 272 [2004]; *People v Gonzalez*, 1 NY3d 464, 467 [2004]), but the evidence supports the jury's conclusion that defendant instead acted with depraved indifference. While "the mere presence of third persons at the scene of a killing

does not convert an intentional homicide directed at a particular victim into depraved indifference murder unless others are actually endangered" (*People v Suarez*, 6 NY3d 202, 213 n 7 [2005] [emphasis omitted]), and more shots generally connote an intent to kill, the circumstances here show that defendant was wildly shooting toward several people. Young and two companions had exited the bar and one was standing at the door when defendant began shooting, and the three remained outside until the shooting ceased (*see People v Craft, supra* at 1147-1148; *People v Parker, supra* at 1162-1164). Defendant fired as many as eight shots, but only four hit Young, and at least one, possibly two, of those shots hit him after ricocheting off of the ground or another surface. The remaining bullets did not strike Young and were not recovered. These remaining projectiles and the ricocheting bullets could just as easily have hit someone other than Young.

In support of an intentional killing, the jury could have inferred from the evidence that defendant was angry at Young after having words with him in the bar, deliberately retrieved a gun from a friend's apartment nearby, laid in wait for Young and purposely unloaded his weapon intending to kill Young. But the jury acquitted defendant of intentional murder. On the other hand, other inferences would not be unreasonable, including inferences which support a depraved indifference murder count. Defendant testified that he was very intoxicated and never had any intention to kill or injure anyone that night. The jury could have concluded that defendant remained outside because he was waiting for his friend in the bar or hoped to get back inside to drink more, and that he had the gun in his waistband before he entered the bar or his friend handed it to him immediately prior to the shooting incident. The fact that most of his shots missed or were not direct hits could imply that his wild shooting was intended as a warning or show of bravado, not to inflict harm. Defendant's reckless shooting placed not only Young, but three other individuals in peril of being shot. Weighing the relative strength of conflicting inferences that may be drawn from the conflicting testimony, defendant's conduct could be considered wanton, deficient in moral sense and demonstrating an attitude of utter disregard for human life, as charged by Supreme Court, such that the jury's verdict was not against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]).

A police detective improperly testified that defendant had a criminal history (*see People v Mullin*, 41 NY2d 475, 479 [1977]). Although such testimony is inherently prejudicial, defendant was not deprived of a fair trial. Supreme Court did not abuse its

discretion in denying defendant's motion for a mistrial (*see People v Birdsall*, 215 AD2d 878, 880 [1995], *lvs denied* 86 NY2d 840 [1995], 88 NY2d 933 [1996]; *People v Skinner*, 211 AD2d 979, 979-980 [1995], *lv denied* 86 NY2d 741 [1995]). Viewing this brief comment in light of the entire testimony, the court mitigated any prejudice by striking the answer and providing a prompt curative instruction (*see People v Santiago*, 52 NY2d 865, 866 [1981]; *People v Durant*, 6 AD3d 938, 941 [2004], *lv denied* 3 NY3d 639 [2004]; *People v Birdsall, supra* at 880; *People v Nagi*, 153 AD2d 964, 964-965 [1989]).

Defendant received the effective assistance of counsel. This constitutional requirement is met if "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]; *see People v Baptiste*, 306 AD2d 562, 569 [2003], *lv denied* 1 NY3d 594 [2004]). Defendant's primary assertion alleging ineffectiveness is that trial counsel should have contested the submission of both the intentional and depraved indifference murder counts to the jury. While the Court of Appeals has held that such twin-count indictments should be extremely rare, this pronouncement was made after defendant's trial (*see People v Suarez*, 6 NY3d 202, 215 [2005], *supra* [decided approximately 10 months after defendant's trial]; *compare People v Register*, 60 NY2d 270 [1983], *cert denied* 466 US 953 [1984]). Viewing the law as of the time of trial, counsel provided defendant effective representation (*see People v Baldi, supra* at 147; *see also People v Parker*, 7 NY3d 907, 908 [2006]).

Cardona, P.J., Mercure, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed.