■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HAROLD ORCUTT, Appellant. [854 NYS2d 247]—

Spain, J.

On the evening of October 20, 1998, defendant was at home with his girlfriend, Tanya Smith, when he found their eight-month-old daughter in her crib with a blanket covering her head, unresponsive and apparently not breathing. Defendant and Smith had been home all afternoon with the baby and their three other young children (two were from Smith's prior marriage). The baby was taken by ambulance to the hospital and pronounced dead shortly thereafter. During questioning the next day by a State Police senior investigator, defendant ultimately signed a written statement admitting that he had carried the baby to her crib sometime after 6:30 P.M. and, when she did not stop crying and kicking, he picked her up and shook her back and forth and up and down for a minute or so until her eyes rolled back and she stopped crying. He laid her down, saw she was still breathing and "wrapped her head in a small blanket . . . grabbed the back of [her] head with [his] left hand and shoved he[r] wrapped face into the larger blanket [in the crib]." He "held his right hand on the bigger blanket and just squeezed together really hard for [about] . . . two minutes . . . until she stopped breathing." He went downstairs and watched television until 8:45 P.M., and when they went upstairs to go to bed he found the baby stiff and unresponsive. An autopsy later that day disclosed that the baby had died as a result of asphyxia due to suffocation; there were no internal or external injuries.

Defendant was charged in an indictment with intentional

murder and depraved indifference murder.[1] County Court denied defendant's motion to suppress his written and oral statements to police. At trial, defendant's written statement was introduced into evidence, and the pathologist who performed the autopsy testified that defendant's statement was "entirely consistent" with her autopsy findings. Smith testified, called as a defense witness, recalling little about that evening except that after defendant found the baby in her crib as described, she went to a neighbors' apartment to call for help. She denied smothering the baby. Defendant also testified, indicating that he had found the baby in her crib with her head wrapped in a blanket, not breathing, but denied having suffocated her.

The jury acquitted defendant of intentional murder but convicted him of depraved indifference second degree murder, for which he was sentenced to a prison term of 25 years to life. Defendant filed a timely notice of appeal, but his appeal could not be perfected because the trial transcript was not complete in limited respects and the court reporter had discarded her notes and records, and she was unavailable for an extended period of time. A reconstruction hearing was finally held in March 2006 at which defendant was represented by new counsel, after which County Court issued a written decision settling the record. Defendant's subsequent motion to vacate the judgment of conviction pursuant to CPL 440.10 (1) (h) based upon claims of ineffective assistance of trial counsel was denied, without a hearing, in a written decision. Defendant now appeals from the judgment of conviction and the order denying his postjudgment motion.

Initially, defendant's challenge to the factual allegations contained in count two of the indictment—charging depraved indifference murder—is not preserved for our review given that it was not raised in pretrial motions (*see* CPL 210.20 [1]; 210.25) and no objection was raised at trial (*see People v Iannone*, 45 NY2d 589, 600-601 [1978]; *People v Anderson*, 290 AD2d 658, 658 [2002], *lv denied* 97 NY2d 750 [2002]). Such factual deficiencies are waivable, nonjurisdictional defects (*see id.*). Notably, this count was not jurisdictionally defective as it charged defendant with a particular named crime, cited the statutory subdivision (*see* Penal Law § 125.25 [2]) and alleged defendant's commission of all of the elements of that crime; it specified the day, time and place of the crime and named the victim, putting defendant on notice of the specific conduct alleged, i.e., he "wrapped a blanket around the victim's head and caused the

---

1. Defendant was also charged with endangering the welfare of a child but, on consent, that charge was never submitted to the jury.

victim to suffocate and die" (*see People v D'Angelo*, 98 NY2d 733, 734-735 [2002]; *People v Rivera*, 84 NY2d 766, 769 [1995]; *People v Iannone*, 45 NY2d at 600-601; *see also* CPL 200.50). Thus, the indictment served all of its essential functions and defendant's challenge to any nonjurisdictional deficiency in the factual allegation following "to wit" was waived.

Next, defendant claims that his conviction should be reversed on the ground that—under current law—the evidence was legally insufficient to establish depraved indifference murder, asserting that the evidence supported only an intentional murder (*see People v Feingold*, 7 NY3d 288 [2006]). However, preservation of such a claim for appellate review requires that a specific motion (*see* CPL 290.10 [1]) be made to the trial court addressed to the particular claimed legal deficiencies in the evidence (*see People v Gray*, 86 NY2d 10, 19 [1995]; *People v Balram*, 47 AD3d 1014, 1015 [2008]; *People v Carter*, 40 AD3d 1310, 1311 [2007], *lv denied* 9 NY3d 873 [2007]; *People v Riddick*, 34 AD3d 923, 924 [2006], *lv denied* 9 NY3d 868 [2007]). No such motion was made. Defendant, at most,[2] made a general motion to dismiss at the close of proof which was insufficient to preserve these specific claims (*see People v Gray, supra; see also People v Finger*, 95 NY2d 894, 895 [2000]; *People v Richins*, 29 AD3d 1170, 1171 [2006], *lv denied* 7 NY3d 817 [2006]). Defendant's postverdict motion pursuant to CPL 330.30 was likewise not sufficient to preserve these claims (*see People v Padro*, 75 NY2d 820, 821 [1990]). Also, defendant registered no objections to the charge as given on this count, which accurately stated the law as it existed at the time of defendant's 1998 trial, and does not now challenge the sufficiency of the evidence under the charge as given. On this record, we decline to exercise our interest of justice jurisdiction to take any corrective action based upon law developed years after defendant's trial (*see* CPL 470.15 [3] [c]; [6] [a]; *see also People v Carter*, 40 AD3d at 1311; *People v Danielson*, 40 AD3d 174, 176 [2007], *affd* 9 NY3d 342 [2007]; *People v Maloy*, 36 AD3d 1017, 1018-1019 [2007], *lv denied* 8

---

**2.** We are cognizant that County Court concluded, after the reconstruction hearing, that trial counsel made no motion to dismiss based upon legal insufficiency, a finding to which we would ordinarily accord deference given the court's role as the final arbiter of the record of the proceedings before it (*see* CPLR 5525; *see also People v Alomar*, 93 NY2d 239, 245, 247 [1999]). Upon our review of the certified record, we find that defense counsel did make a motion to dismiss based upon legal insufficiency of the evidence at the close of proof, but only a general one. Moreover, we find the record on appeal to be sufficient for appellate review (*see People v Shire*, 23 AD3d 709, 709-710 [2005], *lv denied* 6 NY3d 852 [2006]; *cf. People v Harrison*, 85 NY2d 794 [1995]; *People v Jacobs*, 286 AD2d 404, 405 [2001]).

NY3d 987 [2007]; *People v Parker*, 29 AD3d 1161, 1162 n 1 [2006], *affd* 7 NY3d 907, 907-908 [2006]).

Next, despite defense counsel's vehement contentions on appeal, we find that—viewed in the context of the time of the representation—defendant was not denied the effective assistance of counsel at trial (*see People v Baldi*, 54 NY2d 137, 147 [1981]). Given the state of depraved indifference murder jurisprudence at the time of defendant's 1998 trial, which remained static through 2002 (*see Policano v Herbert*, 7 NY3d 588, 600-601 [2006])[3] and did not assume its current status until *People v Payne* (3 NY3d 266 [2004]; *see People v Baptiste*, 51 AD3d 184 [2008] [decided herewith]), neither the failure to challenge the prosecution's use of twin-count indictments (charging both intentional and depraved indifference murder) nor the failure to move to dismiss the depraved indifference murder count constituted ineffective representation (*see People v Sanchez*, 98 NY2d 373 [2002]; *People v Register*, 60 NY2d 270 [1983], *cert denied* 466 US 953 [1984] [both later expressly overruled in *People v Feingold* (7 NY3d 288 [2006])]). The murder counts were submitted to the jury in the alternative, as required (*see People v Gallagher*, 69 NY2d 525, 530 [1987]; *see also* CPL 300.40 [5]). While it has long been recognized that one cannot simultaneously act recklessly and intentionally (*see People v Gallagher*, 69 NY2d at 529-530; *People v Baptiste*, 51 AD3d at 191), twin-count indictments were not uncommon and indeed permissible in 1998 due to the fact that, even in the face of "compelling circumstantial evidence of intent to cause death, [the Court of Appeals] considered the question of the defendant's state of mind to be a *classic matter for the jury*" (*Policano v Herbert*, 7 NY3d at 599 [and cases cited therein] [emphasis added]; *see People v Baptiste*, 51 AD3d at 194; *see also People v Gallagher*, 69 NY2d at 530; *see e.g. People v Sanchez*, 98 NY2d 373 [2002]). That is, until *Payne* in 2004 (*see People v Baptiste, supra*), "where both intentional and depraved indifference murder were charged in one-on-one shootings or knifings, *these [twin] counts were submitted to the jury* for it to sort out the defendant's state of mind unless there was absolutely no evidence whatsoever that the defendant might have acted unintentionally. That a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference" (*Policano*

---

**3.** *Policano* held that the defendant's conviction for his 1997 crime of shooting a victim in the back of the head, final in 2001, is governed by *People v Register* (60 NY2d 270 [1983], *cert denied* 466 US 953 [1984]).

*v Herbert,* 7 NY3d at 600-601 [emphasis added]; *see People v Feingold,* 7 NY3d at 291-294).[4] Thus, on these facts and under the law as it existed in 1998, defense counsel was not remiss in proceeding under twin counts or in failing to move to dismiss the depraved indifference murder count (or the charge therefore) based upon not-yet evolved jurisprudence (*see People v Carter,* 40 AD3d at 1313; *see also People v Danielson,* 9 NY3d 342, 349 [2007] [2001 trial]; *People v Parker,* 7 NY3d 907, 908 [2006]).

A review of the trial transcript otherwise reveals that defense counsel made appropriate pretrial motions, including seeking suppression of defendant's confession to police, vigorously cross-examined the People's witnesses and routinely registered relevant objections. Contrary to defendant's appellate contentions, defense counsel ardently pursued a cogent defense theory that defendant was not responsible for the baby's death, focusing upon the mother's potential culpability, her behavior at the time, and her history of abusive and neglectful treatment of the children including the baby. This was contrasted with defendant's lack of any such history or motive and the believability of his account at trial. With regard to defendant's signed confession, defense counsel established defendant's minimal reading or writing skills and argued (and defendant so testified) that defendant only signed it to end the interrogation after being awake for over 30 hours and distraught over his baby's death. Defendant has not shown that counsel's decision to delay an opening statement until after the People rested, which allowed him to comment on their proof (*see People v Miller,* 13 AD3d 890, 892 [2004]; *People v McDonald,* 255 AD2d 688, 689 [1998]; *cf.* CPL 260.30 [4]), or to preclude the testimony of a Sheriff's Deputy—that upon arrival at the scene, defendant said his baby "suffocated" when asked what had happened[5] —lacked legitimate strategic purposes (*see People v Caban,* 5 NY3d 143, 152 [2005]). While defense counsel's summation to the jury was not a model of clarity, viewing the record as a whole we find that defendant was meaningfully represented (*see People v Benevento,* 91 NY2d 708, 712 [1998]; *People v Ross,* 43 AD3d 567, 570 [2007], *lv denied* 9 NY3d 964 [2007]).

Finally, County Court properly denied defendant's CPL 440.10 (1) (h) motion, premised upon the foregoing ineffective assis-

---

**4.** In *People v Suarez* (6 NY3d 202, 215-216 [2005]) it was pronounced that submission of a twin-count indictment to the jury should in future prosecutions be extremely rare.

**5.** Notably, in the immediate aftermath, defendant gave that same essential description to other nonpolice witnesses and his signed statement indicated that he had used that word at that time.

tance of trial counsel grounds, without a hearing, given that the motion was fully reviewable upon the trial record and submissions; indeed, defendant had not shown "that the nonrecord facts sought to be established are material and would entitle him to relief" (*People v Satterfield*, 66 NY2d 796, 799 [1985]; *see* CPL 440.30 [1], [2], [4]; *see also People v Murray*, 300 AD2d 819, 821 [2002], *lv denied* 100 NY2d 564 [2003]).

Each of defendant's remaining contentions has been reviewed and we find that none warrants the relief he seeks.

Mercure, J.P., Peters, Lahtinen and Malone Jr., JJ., concur. Ordered that the judgment and order are affirmed.